**Thomas P. READ, Jr., Individually and as Independent Executor of the Estate of Ruth Cole, Deceased, et al., Appellants,**

**v.**

**Ruth GEE, Independent Executrix of the Estate of Laura Freeland, Deceased, Appellee.**

**No. 17829.**

Court of Civil Appeals of Texas, Fort Worth.

May 5, 1977.

Rehearing Denied June 2, 1977.

Wm. A. Nobles, Decatur, for appellant independent executor.

Wayne A. Melton, Dallas, for individual appellants.

Stark, Barnhart & Moore, and Richard S. Stark, Gainesville, Andress, Woodgate & Lodewick, and Wm. Andress, Jr., Virgil R. Sanders, Dallas, for appellee.

## OPINION

MASSEY, Chief Justice.

This is an appeal from a judgment of the District Court which ordered the Independent Executor of the Estate of Ruth Cole, Deceased, to deliver over unto the Independent Executrix of the Estate of Laura Freeland, Deceased, all the assets of the estate of Ruth Cole. The appeal is not only by the aforementioned independent executor, but also by those who claim benefit by the will of Ruth Cole whose claims would be extinguished by the order.

■ We reverse the judgment order and remand the cause to the trial court by reason of our holding that there was want of due process of law in the proceedings pursuant to which the judgment was rendered.

While Ruth Cole was alive she made her will, consisting of two pages. When she died, Laura Freeland, her sister, was still alive. Ruth Gee was the daughter of Laura Freeland, and when she died the daughter became executrix of the mother's estate. By the time of Laura Freeland's death all the parties to the instant appeal had become adversaries in litigation. Such litigation concerned whether the Ruth Cole will consisted of one or of two pages. The Freeland contention was that the will consisted of only the single first page, the apparent meaning of such page being that if Freeland survived Cole she would take the entire Cole estate. The adversary contention was that the will consisted of two pages, the apparent provision of the second page being that there would be overriding specific bequests of the will to Thomas P. Read, Jr., and others of the nieces and nephews of Mrs. Cole.

It is not to be inferred by this opinion that this court has arrived at any conclusion; what is expressed is that which was the conclusion of the parties, at least upon a former occasion.

The two-page will was admitted to probate in the County Court of Wise County, Texas; but thereafter and within the proper time Laura Freeland and her daughter, Ruth Gee, filed their contest in County Court. Following trial the County Court denied the Freeland and Gee contest and they appealed from the denial to the District Court for trial de novo. Mrs. Freeland died while the case was pending in District Court and Ruth Gee became independent executrix of the Freeland estate. In that posture the case was tried to a jury in the District Court and upon the jury verdict the will contest was denied. Therefrom Ruth Gee, independent executrix for the Freeland estate, perfected appeal to the Court of Civil Appeals.

February 1, 1975, the Court of Civil Appeals affirmed the judgment of the District Court denying the contest of the Cole will; the court delivered its unpublished opinion in justification of its decision. Ruth Gee applied for writ of error to the Supreme Court of Texas, which application was by the Supreme Court denied with notation of "No Reversible Error".

Thereafter, in the same District Court in which the will contest had been tried, Thomas P. Read, Jr., Individually and as Independent Executor of the Estate of Ruth Cole, Deceased, along with all the claimant beneficiaries except Ruth Gee, Independent Executrix of the Freeland Estate, amended their petition in the suit for will construction and sought declaratory judgment of the Ruth Cole will and order for proper distribution of the estate property. This suit had pended even before completion of the contest over whether the will consisted of one page or of two pages. Such having finally been resolved, the proper point in time was reached whereby there should be estate distribution by the execu-

tor of the Cole estate, and, obviously, in view of the adversary posture of the parties there was necessity for construction of the will, and/or, in any event, the court's decision upon the proper distribution, in order that the executor might safely proceed. This would be advisable whether there was or not any ambiguity in the will.

From the transcript brought forward on appeal there apparently had never been any hearing set for final disposition of the suit for declaratory judgment by the independent executor, et al. The following is shown to have occurred:

(a) March 27, 1976, there was held a pretrial hearing upon the motion of Mrs. Gee, independent executrix for the Freeland estate, to dismiss as party to the suit the independent executor Thomas P. Read, Jr. Though the order relative thereto was not signed until April 2, 1976, there had obviously been a pronouncement by the judge of the court on March 27th that, in his representative capacity, Read would be dismissed as party to the suit upon pleadings to which exceptions had been taken by Mrs. Gee. The order recited the following: "Thomas P. Read, Jr., in his representative capacity as Executor of the estate of Ruth Cole, Deceased, is hereby dismissed as a Party Plaintiff in the above entitled and numbered cause; provided however, such Party Plaintiff in such representative capacity may amend his pleadings in this cause to set out a cause of action against the Defendant."

(b) April 1, 1976, Thomas P. Read, Jr., in his capacity of independent executor, joined by all the other parties allied with him in his individual capacity, filed in the case their plaintiffs' second amended original petition. It is obvious that this amendment was to meet the provision of the order of the court, which, as indicated above, was not signed until April 2, 1976.

(c) April 2, 1976, there was apparently conducted a second pre-trial hearing upon exceptions of Ruth Gee taken to the amended petition filed April 1, 1976. There is some doubt of the fact, for while we have before us what is a full and complete transcript save for the court's docket sheet, the "order" which is included is neither dated nor signed and does not reflect any file mark by the clerk of the court. In the body thereof is included the words: "To all adverse rulings, Defendant duly objected, and it is so noted." The defendant was Mrs. Gee, executrix. Though the body reflects rulings sustaining exceptions of Mrs. Gee, most of her exceptions were apparently overruled.

(d) April 5, 1976, by order signed by the judge of the court, was reflected an "Order of Non-Suit". It reads: "On the motion of the Plaintiffs the above entitled and numbered cause is hereby dismissed without prejudice to the right of Plaintiffs to re-file such cause, and at Plaintiffs cost."

(e) April 29, 1976, another order was signed by the judge of the court. In part it reads: "The order of non-suit dated 5 April 1976, heretofore made herein, not being a final judgment disposing of all issues is hereby set aside. (Paragraph) On motion of the plaintiffs, Thomas P. Read, Jr., individually and as Independent Executor of the Estate of Ruth Cole, deceased, W. T. Read, Carl Read, Jr., Tennessee Sendak, Doris Bogart, Marie Elliott, and Iva Ruth Rhodes, the plaintiffs' cause of action is hereby dismissed *without prejudice to the right of plaintiffs to re-file such cause*, and at plaintiffs' cost (emphasis supplied). (Paragraph) It appearing to the Court that the defendant Ruth Gee as Independent Executrix of the Estate of Laura Freeland, deceased, has in her second amended answer asked for affirmative relief against the plaintiff Thomas P. Read, Jr., as Executor of the Estate of Ruth Cole, deceased, and that she is entitled to such relief because of the fact that as a matter of law there is no ambiguity in the will of Ruth Cole, deceased . . . .. Thomas P. Read, Jr., as Executor of the Estate of Ruth Cole, deceased, is legally obligated to deliver all of said assets to the defendant in her representative capacity; . . . .." Thereafter

was language directing such executor to deliver over to Ruth Gee, executrix, all the assets of the Cole estate. This was the order from which appeal was taken.

Thomas P. Read, Jr., executor, was not present either in person or by attorney, at the proceedings pursuant to which the order of April 29, 1976 was signed and entered. As executor he was represented by a separate attorney. Along with the other plaintiffs in their individual capacities there was individual representation by another attorney. This attorney was present and protesting conduct of the proceedings. He requested and obtained the presence of the court reporter to make a record. From the reporter's record the following is reflected:

(Proceedings of April 29, 1976)

MR. MELTON: Your Honor, before we start, may I ask a question. I have asked the court reporter to record this because I feel frankly, that I am a little put upon having been called over here under these circumstances, and I would like to know if the Court set this matter for hearing at this time and directed me to be here, and if so, what is it that we are going to hear.

I received a telephone call day before yesterday at 1:30 p. m. from Mr. Andress (the Gee attorney) saying that he had arranged with you to hear this matter today at eleven. That is less than forty-eight hours notice.

I immediately called Mr. Nobles (the attorney for Thomas P. Read, Jr. in capacity of executor) in Decatur to find out if he was aware of any reason for a hearing on anything that had been filed in the lawsuit in Decatur and he was, and neither was he aware or had been informed of any hearing scheduled for down here today (at Forth Worth before the judge assigned to hear the case in Decatur). We both had other commitments. He could not get out of his which involved a utilities rate hearing. I cancelled my docket to get over here because I had considerable concern about what is

going to happen. I am here because I suspect something and not because I feel there is anything before the Court nor that the Court has even set this matter. Here we are in Fort Worth. This is a case in Decatur, of course, I have no knowledge of any motions or any post trial matter to be set to which I am expected to respond, and I wish this record to reflect that I am complaining and objecting to the notice that I received or lack of notice, and the fact that there is apparently, to my knowledge, in the record in Decatur in the papers in this cause, where the docket and the jacket is, no motion, no nothing for hearing by the Court at this time or any other time.

THE COURT: Well, I just told Mr. Andress that if he could get the parties together, I would be glad to meet with you here in Fort Worth and that is about all that was said.

No evidence was presented at the meeting of which the record was made. Following the discussion and argument, there was entry of the order of April 29, 1976. The parties plaintiff who were present never agreed to anything and never waived any right.

■ We first dispose of the motion to dismiss as party to the appeal Mr. Thomas P. Read, Jr., in his capacity of executor. We overrule the motion to dismiss and retain him as a party appellant in his representative as well as his individual capacity.

As heretofore mentioned, we have determined that the judgment order from which the appeal has been taken should be reversed, with the cause remanded for trial.

■ This we do on the premise that there was want of due process of law guaranteed by both the Federal and State Constitutions. The thrust of nearly all of the points of error presented by the appeal directly points to such as the premise for complaint, though the term "due process" is never mentioned. Appellee could not have been

misled; anyway the want of due process of law in the entry of the judgment which made final disposition of the case is reflected by the record itself and therefore would be fundamental error which the court could consider even without assignment.

All our quotations of expressions upon the law relative to due process are to be found in the case of *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). These are:

 "A fundamental requirement of due process is 'the opportunity to be heard.'"

 "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . .'"

 "Questions frequently arise as to the adequacy of a particular form of notice in a particular case. (Cases cited.) But as to the basic requirement of notice itself there can be no doubt, where, as here, the result of the judicial proceeding was permanently to deprive a legitimate parent of all that parenthood implies."

On the statement last made the same could also properly be said as applied to the deprivation of any other right justifiably accorded by provisions of law. Even apart from the due process aspect of the case, there is want of conformity to the provisions of T.R.C.P. 21a, "Notice".

 The third to sixth points of error, inclusive, of the individual plaintiffs/appellants are sustained and the third to sixth points of error, inclusive, of plaintiff/appellant Thomas P. Read, Jr., Independent Executor of the Estate of Ruth Cole, Deceased, are sustained. All other of the points of error are overruled as immaterial to the decision to be made on the immediate appeal. We do, however, take occasion to observe that whatever the outcome on retrial the preferable practice for payments and distribution would be best provided to be conducted under the authority of the Probate Court, actual or potential, rather than under authority of a district court not vested with probate jurisdiction.

Judgment is reversed, with the cause remanded for trial.

HUGHES, J., not participating.