

*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★      ★ ★ ★

## OPINION

No. 04-07-00851-CV

In re **ESTATE OF** Gilbert M. **DENMAN**, Deceased

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2004-PC-1687-B
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Justice
                Karen Angelini, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:    August 27, 2008

MOTION TO DISMISS GRANTED; DISMISSED IN PART FOR WANT OF JURISDICTION;
AFFIRMED

This is an appeal from the probate court's judgment construing section 2603(b) of the Internal

Revenue Code and provisions in the will of Gilbert M. Denman, Jr. ("the Will") to determine the

proper allocation of the federal generation-skipping transfer tax ("GST tax"). Appellants Leroy G.

Denman, Jr., as independent coexecutor ("Denman"), and Wendel Denman Thuss, a beneficiary

under the Will ("Thuss"), urged the tax should be charged and allocated to the residuary estate.

Appellees The Trust Company, a coexecutor of the Will and co-trustee of a trust created by the Will,

and beneficiaries Trinity University in San Antonio ("Trinity") and the San Antonio Museum of Art

("the Museum"), advocated the tax should be allocated to the El Capote Ranch, which was

transferred to Thuss in a codicil to the Will. The trial court rendered a final judgment declaring the GST tax should be charged and allocated to the El Capote Ranch. Denman and Thuss each perfected an appeal. The Trust Company, joined by Trinity and the Museum, filed a motion to dismiss Denman's appeal for want of jurisdiction based on an absence of standing. We grant the motion to dismiss and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Gilbert Denman ("the Decedent") executed a holographic will. Between 1991 and 2002, he executed four codicils to the Will. In Article XIII of the Will, the Decedent bequeathed one-half of the residuary of the estate to Trinity and the other half to The Trust Company and Denman as trustees of a trust ("the Trust") created in the Will for the benefit of the Museum. In 2002, the Decedent executed Article IV of the codicil to the Will in which he bequeathed to Thuss, his third cousin, all of his real property in Guadalupe and Gonzales Counties as well as the animals and farm equipment thereon. This property is known as El Capote Ranch ("the Ranch"). The parties do not dispute that the Decedent's bequest to Thuss gave rise to the federal GST tax imposed by Chapter 13 of the Internal Revenue Code. *See* 26 U.S.C. § 2601.

The Decedent died on May 16, 2004, and the Will was admitted to probate in June of that year. In August 2005, The Trust Company and Denman filed the estate's federal tax return. The return, which was signed by Denman and a representative of The Trust Company, apportioned and charged payment of the GST tax to the Ranch bequeathed to Thuss. The amount of the GST tax as apportioned and charged in the tax return was $913,868.

Thuss disagreed with the position taken by The Trust Company and Denman in the federal tax return. He contended Article XII of the Will, which provides for allocation of taxes, removed

the GST tax burden from him as the transferee of the Ranch and placed it on the residuary estate. Because of Thuss's contention, The Trust Company and Denman, as coexecutors and co-trustees, filed a petition in the probate court seeking a declaratory judgment that the GST tax should be allocated and charged to the property transferred to Thuss. They argued section 2603(b) of the Internal Revenue Code mandates the tax on a generation-skipping transfer be charged to the property transferred unless otherwise directed by the governing instrument through a "specific reference to the tax imposed" under Chapter 13 and the Will did not contain the required specific reference. *See id.* § 2603(b). Thuss counterclaimed, asserting that because Article XII of the Will specifically referred to the GST tax the transfer tax burden should fall on the residuary estate.

After The Trust Company and Denman filed a motion for summary judgment, Denman changed his position on the tax burden, deciding his grandson was correct and that the Decedent's intent as expressed in the Will was that the GST tax be imposed on the residuary estate. As a result, Denman obtained new counsel and, solely in his capacity as coexecutor, filed amended petitions generally adopting Thuss's position.[1]

The Trust Company, joined by Trinity, filed an amended motion for summary judgment, Denman and Thuss filed a cross-motion for summary judgment, and the probate court heard argument on all the motions. The court rendered a final judgment on November 9, 2007, granting the motion for summary judgment filed by The Trust Company and Trinity and denying the one filed by Denman and Thuss. The probate court declared the Will did not direct the GST tax for the Ranch to be paid from the residuary estate so "the GST tax must thus be charged to such property," i.e., the

---

[1]The Trust Company filed a plea in abatement seeking to join Denman as a necessary party in his capacity as a co-trustee. In response, Denman agreed to be bound as a co-trustee by any judgment in this matter.

Ranch. The probate court impliedly found the Will did not contain a sufficiently specific reference to the GST tax to remove it from the statutory scheme of section 2603(b) of the Internal Revenue Code. Denman and Thuss appealed.

## APPELLATE STANDING

The Trust Company, joined by Trinity and the Museum, move to dismiss Denman's appeal for want of jurisdiction. They argue Denman, as coexecutor of the estate, lacks standing because the interests of the estate were not injured or prejudiced by the probate court's judgment.

The standing doctrine identifies suits appropriate for judicial determination. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). Standing is a component of subject matter jurisdiction and, as such, is a question of law. *Id*. at 305 n.3. "Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). While a party of record is generally entitled to appellate review, that party must be prejudiced before he has standing to appeal. *Aguirre v. Phillips Props., Inc.*, 111 S.W.3d 328, 335 (Tex. App.–Corpus Christi 2003, pet. denied); *Gorman v. Gorman*, 966 S.W.2d 858, 864 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). The appellant bears the burden of making a prima facie showing of prejudice. *Gorman*, 966 S.W.2d at 864. Accordingly, Denman is required to make a prima facie showing that either he, in his capacity as coexecutor, or the estate itself was prejudiced or injuriously affected by the probate court's judgment. *See id.*

Denman claims he has standing in his capacity as coexecutor on two bases: (1) his duty to ensure a proper construction of the Will, and (2) the possibility he could be held liable for any deficiency arising from an incorrect interpretation of the Will. With regard to his first contention,

Denman argues Texas courts have generally recognized an executor's standing to appeal probate court rulings. *See Drew v. Jarvis*, 110 Tex. 136, 216 S.W. 618 (1919); *Read v. Gee*, 551 S.W.2d 496 (Tex. Civ. App.–Fort Worth), *writ ref'd n.r.e.*, 561 S.W.2d 777 (Tex. 1977); *Pipkin v. Hays*, 482 S.W.2d 59 (Tex. Civ. App.–Austin 1972, writ ref'd n.r.e.). Denman suggests these cases hold an executor always has standing to appeal probate court rulings. We disagree. None of the authorities cited by Denman so hold or support such a broad proposition. *See id.*

In *Drew*, an administratrix appealed a probate court's order withdrawing the estate from administration. 216 S.W. at 618. The supreme court held the administratrix had standing to appeal because she had a duty to recover the estate and to withhold it from those not entitled to receive it to avoid financial loss to the estate. *Id*. at 620. In *Read*, the appellate court held the executor had standing to appeal an order directing him to deliver all of the estate's assets to the executrix of a second estate. 551 S.W.2d at 498, 500. The executor sought to appeal on the ground that neither the executor nor the beneficiaries were given notice of the hearing that produced the order and were not present or represented by counsel. *Id.* at 500. Although the court did not specifically mention an adverse impact on the estate, the due process errors obviously had an adverse impact on the estate because it was not represented at the hearing that resulted in an order disposing of all of the estate's assets. *See id.*

Finally, in *Pipkin*, a coexecutrix, in her individual capacity as a beneficiary of her mother's will, appealed on an issue involving allocation of taxes. 482 S.W.2d at 59-60. The executrix's individual interests were adversely affected by the trial court's determination that taxes were to be charged against the individual devises rather than the residuary estate. *Id*. at 60. Because the

coexecutrix was injuriously affected by the trial court's judgment, she had standing as an individual devisee to contest that judgment on appeal. *See Torrington*, 46 S.W.3d at 843.

Denman does not and cannot argue the probate court's ruling had an adverse or injurious effect on the estate. The undisputed evidence established that if the probate court ruled as suggested by Denman and Thuss, the estate would incur an increased tax burden of more than $400,000 – an obvious adverse consequence to the estate. *See Oppenheimer, Blend, Harrison & Tate*, 192 S.W.3d 780, 785-87 (Tex. 2006) (recognizing, in context of legal malpractice action, that increased tax consequences are adverse effect on estate). The only party adversely affected by the probate court judgment is Thuss, who is responsible under the court's ruling for payment of the GST tax. Accordingly, Denman has not made a prima facie case showing that the estate will be injured or prejudiced if he is not permitted to appeal.

Denman cites several cases from other jurisdictions holding that because an executor has the duty to carry out the intent of the testator, he has standing to seek appellate review if he believes the probate court incorrectly interpreted the will. *See Brown v. Peters*, 350 N.E.2d 565, 566 (Ill. App. Ct. 1976) (holding that while executor has no personal property right, he has personal responsibility to ensure will is probated in accordance with testator's intent and this interest confers appellate standing); *In re Succession of Schiro*, 691 So.2d 1374, 1376-77 (La. Ct. App.), *writ denied*, 700 So.2d 518 (1997) (holding executor may appeal from judgment interpreting will because he has duty to carry out provisions of will as he understands them); *Budin v. Levy*, 180 N.E.2d 74, 76 (Mass. 1962) (holding executor has duty to carry out testator's intent and thus has standing to appeal if he believes judgment is contrary to testator's intent); *Howard Sav. Inst. of Newark v. Peep*, 170 A.2d 39, 42 (N.J. 1961) (holding that because executor has duty to ensure estate is

distributed in accordance with testator's wishes, executor has standing to appeal if he believes lower court has ruled contrary to testator's intent). However, no Texas case has adopted the positions espoused by these jurisdictions and, based on existing law, the requirements for appellate standing in Texas are clearly more rigorous. *See Aguirre*, 111 S.W.3d at 335; *Gorman*, 966 S.W.2d at 864. We decline to broaden appellate standing to allow an executor to appeal when neither he nor the estate is adversely affected by the probate court's judgment.

Denman's second standing argument is based on his own alleged potential personal liability in the event of any tax deficiency resulting from an incorrect ruling from the probate court. The parties agree that under certain circumstances federal law imposes liability on estate representatives for payment of taxes:

> A representative of . . . an estate . . . paying any part of a debt of the
> . . . estate before paying a claim of the Government is liable to the
> extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713(b). Denman suggests, as does a literal reading of section 3713(b), this provision imposes strict liability on an estate representative when he makes a distribution that leaves the estate with insufficient funds to pay a debt owed to the federal government. *See Leigh v. Comm'r*, 72 T.C. 1105, 1109 (1979) (construing predecessor of section 3713(b)). However, "[i]t has been long held that in order to render a fiduciary personally liable . . . he must first be chargeable with knowledge or notice of the debt due to the United States, at a time when the estate had sufficient assets from which to pay this debt." *Id*. (citing *Want v. Comm'r*, 280 F.2d 777 (2d Cir. 1960); *U.S. v. Vibradamp Corp*., 257 F.Supp. 931 (S.D. Cal. 1966); *Irving Trust Co. v. Comm'r*, 36 B.T.A. 146 (1937)); *see also Beckwith v. Comm'r*, 69 T.C.M. (CCH) 1678 (1995); *Estate of Frost v. Comm'r*, 65 T.C.M. (CCH) 2101 (1993). "The issue as to notice is whether the executor knew or was chargeable with

knowledge of the debt – that is, whether the executor was in possession of such facts as to 'put him on inquiry.'" *Frost*, 65 T.C.M. 2101 (quoting *New v. Comm'r*, 48 T.C. 671 (1967)).

Denman argues that if his interpretation of the Will is correct and the residuary estate is charged with the GST tax, the tax burden on the estate will be much higher than if the probate court's interpretation is upheld. He claims that if the probate court's judgment "stands uncorrected," he and The Trust Company may become personally liable for any deficiency in the taxes due and this potential personal liability gives him a justiciable interest in the appeal. We disagree. Denman has not been put on notice of any GST tax deficiency due to the United States. The GST tax charged to Ranch has been paid. The record contains no evidence that the Internal Revenue Service is examining the estate's liability or claiming any additional tax is due.

Moreover, even if we assume Denman has notice of a debt based on his belief that the probate court erred in its tax allocation, he is not exposed to any tax liability under section 3713(b). If this matter were to be finally decided in favor of Denman's interpretation and the estate were thereby to incur additional tax debt, Denman would only have to wait until the taxes were paid according to the final judgment to distribute the estate. Section 3713(b) imposes personal liability on estate representatives only if they distribute the estate **before** satisfying the estate's debt to the federal government. 31 U.S.C. § 3713(b). Accordingly, Denman does not face any potential injury from the probate court's judgment in his capacity as executor – unless he decides to distribute the estate before Thuss's appeal is finally resolved.

We hold Denman lacks standing to prosecute this appeal. Accordingly, we grant the motion to dismiss for want of jurisdiction and dismiss Denman's appeal. Because Thuss has also appealed, raising the same issues as Denman, we must address the merits.

## ALLOCATION OF THE GENERATION SKIPPING TRANSFER TAX

### *Standard of Review*

We review a trial court's order granting summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "When conducting a de novo review, the reviewing tribunal exercises its own judgment and redetermines each issue of fact and law." *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). No deference is given to the lower court's decision. *See id.* When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both parties, determine all questions presented, and, if we determine the trial court erred, we must render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661. The parties agree the only issue in dispute – the interpretation a statute governing allocation of taxes – is a question of law. *See Johnson v. City of Forth Worth*, 774 S.W.2d 653, 656 (Tex. 1989); *In re K.L.V.*, 109 S.W.3d 61, 64 (Tex. App.–Fort Worth 2003, pet. denied).

### *Analysis*

The parties agree section 2603(b) of the Internal Revenue Code is unambiguous and controls this appeal. Section 2306(b) provides:

> Unless otherwise directed pursuant to the governing instrument by specific reference to the tax imposed by this chapter, the tax imposed by this chapter on a generation-skipping transfer shall be charged to the property constituting such transfer.

26 U.S.C. § 2603(b).

Article IV of the fourth codicil to the Will, executed on July 17, 2002, states:

> I will, bequeath and devise to Wendel Denman Thuss all of [my] real estate in Guadalupe and Gonzales Counties, Texas; and all my animals and farm equipment situated there.

Article XII of the Will states, in pertinent part[2]:

> Any transfer, estate, inheritance, succession and other death taxes which shall become payable by reason of my death shall be apportioned as follows: Any taxes attributable to any property passing under my exercise of powers of appointment in paragraph X [and I believe there will be no taxes on this exercise of my powers of appointment as they were limited in the case of my grandmother's will and as I restricted and relinquished those powers under the gift and legacy by my grandfather prior to 1952 in order to make them nontaxable] shall be allocated on a pro rata basis to that legacy and shall be paid out of the property thereby transferred, any other such taxes shall be paid out of my residuary estate.

The parties agree the devise of the Ranch to Thuss was a generation-skipping transfer as defined by section 2611 of the Internal Revenue Code. The parties agree this transfer is subject to the GST tax. *See id.* § 2601. The parties also agree federal law mandates the GST tax be charged to the Ranch unless the Will directs otherwise "by specific reference to the tax imposed" by section 2603(b). *See id.* § 2603(b). The only dispute is whether Article XII of the Will specifically refers to the GST tax as one of the taxes to be paid by the residuary estate.

Though Thuss asserts in his brief that "[t]he issue in this case is whether the tax allocation provision of Gilbert Denman's Will is sufficiently specific, in light of the requirements of the federal statute governing payment of the Generation-Skipping Transfer ('GST') tax, to charge the GST tax to the residuary estate rather than to specific bequests ('the transfers') of property," much of his brief

---

[2]The portion of Article XII not included refers to payments to trust beneficiaries who are minors or under disability and is irrelevant to a determination of the tax issue.

is devoted to arguing the Decedent's intent with regard to tax allocation. At oral argument of this appeal, the parties agreed, as do we, that section 2603(b) controls despite the testator's intent.[3] Accordingly, arguments about the Decedent's intent are misplaced. The question is whether Article XII of the will contained a specific reference to the GST tax as required by section 2603(b) of the Internal Revenue Code. If the Decedent intended to opt out of the general allocation scheme, he was required to make a specific reference to the GST tax.

We must first determine what law governs our interpretation of the specificity requirements of section 2603(b). Generally, a decision from a federal court, other than the United States Supreme Court, on a federal matter is not binding on this court and is considered merely persuasive. *Christus Health Gulf Coast, Inc. v. Aetna, Inc.*, 237 S.W.3d 338, 343 n. 8 (Tex. 2007) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). However, in *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580 (Tex. 1964), the Texas Supreme Court held it was "constrained to follow the federal courts in their interpretation and application of the federal tax statutes." Accordingly, based on the mandate of *Ray Thomas Gravel*, we must follow any relevant tax court cases construing the specificity requirement of section 2603(b). *See id.*; *see also In re Estate of Tubbs*, 900 P.2d 865, 870 (Kan. Ct. App. 1995, rev. denied) (declining to apply Kansas law governing allocation of the GST tax because of existence of section 2603(b) and holding any state public policy concerning application of federal taxes is preempted by section 2603(b)).

There are few cases addressing whether particular language constitutes a "specific reference" for purposes of section 2603(b). However, those that have addressed the issue support the trial

---

[3]The issue of whether a devisee may have a viable claim under state law for reimbursement for the amount of taxes paid where the testator's clear intent was for the devisee to receive the full value of the bequest is not before us.

court's judgment, and we find one of those cases directly on point. *See Estate of Monroe v. Comm'r*, 104 T.C. 352 (1995), *rev'd in part on other grounds*, 124 F.3d 699 (5th Cir. 1997). In *Monroe*, the decedent's will included specific "in-trust bequests," and directed that "all federal estate taxes, state and City inheritance or estate transfer taxes or other death taxes" were to be paid from the residuary estate. 104 T.C. at 353, 363. The will also contained a number of specific cash bequests and provided those bequests would each "bear its proportionate part of all death taxes that may be attributable thereto." *Id.* at 354. After a federal tax return was filed, the Commissioner of the Internal Revenue determined there was a tax deficiency and alleged, among other things, that the GST tax applicable to the "in-trust bequests," which had been allocated to the particular bequests on the tax return, had been improperly charged and allocated. *Id*. at 352. The Commissioner altered the tax liability because he determined, based on the language of the will, that the GST tax was to be charged to the residuary, not the specific in-trust bequests. *Id*. at 363. By asserting this position, the Commissioner obviously concluded the will contained a specific reference to the GST tax of section 2603(b).

On appeal to the tax court, the provisional administrator and executor claimed the will did not contain a specific reference to the tax imposed by section 2603(b) sufficient to remove it from the default provision of section 2603(b). *Id.* at 363-64. After reviewing the language of section 2603(b) and considering the tax allocation provision of the will, the tax court held:

> Section 2603(b) requires that there be a "specific reference" to the generation-skipping transfer tax to prevent a charge to the property constituting the transfer. The words of the provision are unambiguous and should be accorded their ordinary and everyday meaning. [citation omitted] . . . Section 2603(b) requires a will or other governing instrument to make specific reference to the tax "imposed by this chapter", namely, chapter 13, captioned Tax on

> Certain Generation-Skipping Transfers . . . There is no evidence of legislative purpose overriding the plain meaning of "specific reference", and, thus, we hold that an explicit reference to generation-skipping transfer taxes is required by section 2603(b). [citation omitted]

*Id*. at 363-65. The court considered and rejected the Commissioner's argument that the testator's "failure specifically to refer to generation-skipping transfer taxes is not controlling, because, in matters of will construction, the testator's intent controls." *Id*. at 364. The court also rejected the Commissioner's argument that the testator's contrasting treatment of the in-trust bequests and numerous cash bequests established the testator's intent that GST taxes pertaining to the in-trust bequests be charged to the residuary. *Id*. The court likewise rejected his argument that a reference to "death taxes" could be interpreted as including GST taxes. *Id*. The tax court reversed the Commissioner's decision, concluding the will did not contain a specific reference to the GST tax, and therefore the taxes on the in-trust bequests were chargeable to the those bequests. *Id*. at 365.

Thuss contends *Monroe* is inapplicable because the Will contains the phrase "transfer tax" and the *Monroe* court did not construe the reference to "transfer tax." Rather, the court merely determined whether the phrase "death taxes" was a sufficiently specific reference to the GST tax. We disagree. The tax court in *Monroe* was asked to determine if the in-trust bequests were to be charged with the transfer taxes. The applicable provision of the will with regard to these bequests referred not simply to death taxes, but to "all federal estate taxes, state and City inheritance or estate transfer taxes or other death taxes." *Id*. at 353. In determining this provision was not sufficiently specific, the tax court expressly rejected a claim by the Commissioner that the phrase "death taxes" could be construed as a reference to the GST tax. *Id*. at 364. This rejection was not, however, the ultimate basis of the court's decision. Rather, the court's decision was based on the absence of an

explicit reference to the GST tax in the tax allocation provision of the will applicable to the in-trust bequests. *Id.* at 364-65.

Pursuant to *Monroe*, a reference to "transfer" taxes or other taxes that may arise at the death of the testator is not a "specific reference" sufficient to satisfy the mandates of section 2603(b). A will or other instrument must specifically refer to the GST tax. *Id.* Just as in *Monroe*, the Will in this case made reference to transfer, estate, and death taxes. And, just as in *Monroe*, the Will fails to make a specific reference to the GST tax.

That a mere reference to "transfer" taxes is insufficient to comply with section 2603(b) is further supported by the fact that, by definition, all taxes due upon a testator's death are transfer taxes. *See* 26 U.S.C. § 2001(a) (stating that "[a] tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States); TEXAS TAX CODE ANN. § 211.051(a) (Vernon 2008) (stating that "[a] tax equal to the amount of the federal credit is imposed on the transfer at death of the property of every resident."). Without a more specific reference, use of the word "transfer" could refer to all taxes payable upon property that is transferred at the death of the testator.

Citing *Estate of Green v. Comm'r*, 86 T.C.M. (CCH) 758, 2003 WL 23018841 (2003), Thuss argues no specific language is necessary to opt out of the general apportionment scheme. In *Green*, the testator's will directed:

> I direct my Personal Representative to pay, out of my estate, **any tax imposed under Chapter 13 of the Internal Federal Revenue Code on property transferred in a "direct skip,"** as defined in Section 2612(c) of the Code; such tax shall not be deducted from or reduce the gift, bequest or devise which constitutes a "direct skip."

*Id.* at *1 (emphasis added). The executor argued the GST tax had to be allocated to the transferred property because the will was not sufficiently specific under section 2603(b). *Id*. at *3. The executor contended that to avoid the default provision of section 2603(b), the will had to instruct the executor not to "charge" the GST tax to the transferred property. *Id*. at *5. The court held it was not necessary for the will to use the word "charge" because section 2603(b) does not require any specific language to opt out of the general apportionment scheme and it was "sufficient that decedent's will . . . made a specific reference to the GST tax." *Id*. (citing *Monroe*, 104 T.C. at 363-65).

While the court essentially stated no "magic language" was required, it nevertheless held that a specific reference to the GST tax was required. *Id.* The will in *Green* satisfied this requirement by specifically referring to Chapter 13 of the Internal Revenue Code and "property transferred in a 'direct skip.'" *Id.* Accordingly, *Green* provides support for the trial court's judgment rather than for Thuss's position. S*ee also Estate of Meyer*, 702 N.E.2d 1078, 1085 (Ind. Ct. App. 1998) (holding trust was required to pay GST tax because trust instrument did not rebut section 2603(b) presumption); *Tubbs*, 900 P.2d at 871 (using definitional analysis to conclude that "specific reference" requires that GST tax "must be explicitly mentioned.").

The Will does not contain the explicit reference mandated by *Monroe*, nor does it approximate the reference found sufficient in *Green*. Because it does not contain a "specific reference" to the GST tax, the default provision of section 2603(b) applies and the tax must be allocated and charged to the Ranch.

## CONCLUSION

We hold Denman has no appellate standing because neither he nor the estate has been injuriously affected by the probate court's judgment. *See Torrington*, 46 S.W.3d at 843. Texas

courts have not recognized an executor's right to appeal probate rulings simply to ensure proper will construction. Additionally, Denman is not on notice of any additional tax liability that might subject him to liability under section 3713(b). Accordingly, we grant the motion to dismiss for want of jurisdiction and dismiss Denman's appeal.

Section 2603(b) of the Internal Revenue Code requires a very specific reference to the GST tax. Language beyond the mere use of the word "transfer" is required to defeat the default tax allocation provision of section 2603(b). *See Green*, 86 T.C.M. 758, at * 5; *Monroe*, 104 T.C. at 364-65. The testator must, in some manner, unambiguously refer to the GST tax. Based on *Monroe* and *Green*, we hold the Decedent's will does not contain a specific, unambiguous reference to the GST tax. We therefore affirm the trial court's judgment.

Steven C. Hilbig, Justice