**Affirm and Opinion Filed September 1, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00255-CV**

## IN RE GUARDIANSHIP OF JOYCE MARGOL, AN INCAPACITATED PERSON

**On Appeal from the Probate Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. PR-20-02238-2**

## OPINION ON REHEARING

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

We deny Stuart Margol's motion for rehearing and, on our own motion, withdraw our opinion dated June 16, 2022, and vacate the judgment of that date. This is now the opinion of the Court.

Joyce Margol is an incapacitated person. She has three children: appellant Stuart Margol, appellee Marla Margol, and Debra Margol Baker.[1] Stuart acted as Joyce's agent pursuant to powers of attorney that Joyce executed before becoming incapacitated and also as a trustee of the Melvin Margol Family Trust. After disputes

---

[1] We will refer to Joyce and her children by their first names.

arose between Stuart and Marla, Marla filed an Application for the Appointment of a Temporary and Permanent Guardian of the Person and Estate of Joyce Margol. Stuart contested Marla's application and filed his own application for a guardianship.

The probate court denied Marla's application for appointment of a temporary guardian of the person and appointed a temporary guardian of the estate; the court also suspended all powers of attorney signed by Joyce except for her medical power of attorney. Marla then filed a motion in limine pursuant to Texas Estates Code section 1055.001(b). In the motion, Marla asserted Stuart's interests were adverse to Joyce's interests and he lacked standing to contest the creation of a guardianship for Joyce or to file an application to be appointed guardian. The court held a two-day evidentiary hearing on the motion in limine before granting the motion. The probate court subsequently held an evidentiary hearing on Marla's motion to appoint a permanent guardian of the person and of the estate; the court did not permit Stuart to participate in the hearing. Following the guardianship hearing, the probate court appointed a permanent guardian of the person and a permanent guardian of the estate. This appeal followed.

Stuart appeals from three orders: (1) the March 19, 2021 Order Granting Applicant's Motion in Limine; (2) the April 22, 2021 Order Appointing Permanent Guardian of the Estate and Legal Counsel for the Permanent Guardian of the Estate; and (3) the April 22, 2021 Order Appointing Permanent Guardian of the Person. In four issues, Stuart argues: (1) the temporary guardian appointed by the trial court

was not certified to provide guardianship services; (2) the probate court abused its discretion by ordering a permanent guardianship over the Estate and Person of Joyce Margol without obtaining necessary jury findings; (3) the probate court erred by ordering a permanent guardianship without legally sufficient evidence; and (4) the probate court erred by granting Marla's motion in limine and thereafter excluding Stuart from the guardianship proceedings. We affirm the three orders Stuart challenges on appeal.

### A. Motion in Limine Proceedings[2]

We begin with Stuart's fourth issue because it is dispositive of this appeal.

Marla's motion in limine argued that Stuart's interests were adverse to Joyce's interests and, as a result, Stuart lacked standing to contest the appointment of a guardian. During the two-day evidentiary hearing on Marla's motion, the court heard witness testimony, including from Stuart, and considered several exhibits. The probate court's order granting Marla's motion in limine states that Stuart may not file an application to create a guardianship for Joyce, contest the creation of a guardianship for Joyce, contest the appointment of a person as Joyce's guardian, or contest an application for complete restoration of Joyce's capacity or modification of the guardianship; additionally, the court ordered all pleadings filed by Stuart be dismissed for lack of subject matter jurisdiction.

---

[2] In the context of a guardianship proceeding, a motion in limine is a motion challenging a person's standing. *See* TEX. EST. CODE ANN. § 1055.001(c).

## B.     Findings of Fact and Conclusions of Law

The probate court entered findings of fact, which include:

5.     Upon the death of the Protected Person's husband, Melvin Margol, in 1992, a testamentary trust known as the Melvin Margol Family Trust for the benefit of the Protected Person was established under the Last Will and Testament of Melvin Margol (the "Trust").

6.     The Protected Person's three children, Stuart, [Debra], and Marla Margol, are the Co-Trustees of the Trust, designated to act by majority decision.

7.     Stuart controlled the Trust since its inception by transferring the Protected Person's assets, including both real and personal property, into and out of the Trust without the knowledge and consent of the other Co-Trustees.

8.     Stuart depleted the Trust by unilaterally deeding all real property and transferring all cash assets out of the Trust to the Protected Person, individually, without the knowledge or consent of the other Co-Trustees, after which Stuart had sole control of the Protected Person's assets as agent under her Powers of Attorney. The distribution from the Trust was premature.

9.     The terms of the Trust do not grant Stuart, as Trustee, the authority to loan money from the Trust to himself, make gifts from the Trust to himself, or perform any other act of self-dealing.

10.     The terms of the Powers of Attorney do not grant Stuart the authority to loan money from the Protected Person's Estate to himself, make gifts from the Protected Person's assets to himself, or perform any other act of self-dealing. In contrast, Stuart's tax professional testified that Stuart had the authority to self-deal. The Powers of Attorney do not allow for self-dealing.

11.     As Trustee of the Trust, Stuart borrowed $135,000 from the Trust, beginning in October 2011, without any security. No documentation was offered to support the loans, despite Stuart's description of himself as an expert at real estate transactions and managing businesses. The loans benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

12.     As agent under the Protected Person's Powers of Attorney, Stuart borrowed $250,000 from the Protected Person's Estate, beginning in August 2013, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

13. As agent under the Protected Person's Powers of Attorney, Stuart borrowed $20,000 from the Protected Person's Estate, beginning in January 2014, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

14. As agent under the Protected Person's Powers of Attorney, Stuart borrowed $300,000 from the Protected Person's Estate, beginning in November 2016, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

15. In total, Stuart took over $705,000 in personal, unsecured, and undocumented loans from the Trust and the Protected Person's Estate.

16. Although the $705,000 in loans taken by Stuart appear to have been paid back, there was no documentation to support the loans or to define the repayment obligations.

. . . .

18. Over $10,000 in interest on the loans taken by Stuart remains unaccounted for.

19. There is no evidence that Stuart paid the Protected Person back for any profits gained or losses sustained from the loans.

20. In 2008, Stuart, as Trustee of the Trust, sold a piece of residential real property owned by the Trust to Stuart's business partner, [omitted], without the knowledge or consent of the other Co-Trustees.

21. From 2010 to 2020, Stuart, as Trustee of the Trust and agent under the Protected Person's Powers of Attorney, used approximately $378,960.66 from the Trust and the Protected Person's Estate to pay off credit cards titled in Stuart's individual name or in the names of entities controlled by Stuart, and there has been no evidence presented that the purchases made with those credit cards were for the benefit of the Protected Person.

. . . .

32. Stuart was acting for his own benefit as Trustee of the Trust and agent under the Protected Person's Durable and General Powers of Attorney, rather than acting for the benefit and best interest of the Protected Person.

33. Stuart is not acting in the best interest of the Protected Person as agent under the Protected Person's Medical Power of Attorney.

. . .

–5–

38.     On November 9, 2020, the Temporary Guardian filed a Motion to Compel Compliance with Previous Court Order, seeking an order from the Court compelling Stuart to comply with the Order Appointing Temporary Guardian by producing documentation regarding the $705,000 Stuart borrowed from the Trust and the Protected Person's Estate, as well as other real and personal property that Stuart transferred to himself from the Protected Person's Estate, including the Timeshares.[3]

39.     On December 8, 2020, the same day as the hearing on Temporary Guardian's Motion to Compel Compliance with Court Order, Stuart's counsel signed an Agreed Order Compelling Compliance, agreeing to produce all documentation regarding the loans and other transactions performed by Stuart and agreeing to convey the Timeshares, listed in Stuart's name, back to the Protected Person by January 31, 2021.

40.     After January 31, 2021, Stuart informed the Temporary Guardian that the Timeshares are owned by the Trust, contrary to Stuart's prior representations that the Timeshares were owned by him and that the Trust had been depleted.

41. After January 31, 2021, Stuart has failed and refused, and continues to fail and refuse, to transfer the Timeshares back to the Protected Person in violation of the Order Compelling Compliance.

42.     Despite the Temporary Guardian's demands, Stuart has failed and refused, and continues to fail and refuse, to convey his interest in the Midway Condo[4] back to the Protected Person.

43.     Despite the Temporary Guardian's demands, Stuart has failed and refused to fully cooperate with the Temporary Guardian's investigation by providing incomplete information and documentation, if any.

---

[3] The temporary guardian testified that, according to tax returns, Joyce owns an interest in three timeshares. However, the timeshare company listed Stuart as the owner, and Stuart admitted the timeshares were in his name. The temporary guardian asked Stuart to transfer the timeshares to Joyce, the trial court ordered Stuart to transfer the timeshares by January 31, 2020, and the attorney for the temporary guardian drafted conveyances and sent them to Stuart to execute. However, at the time of the limine hearing in March 2021, Stuart had not transferred the timeshares to Joyce. Stuart testified the timeshares were in the Trust, but also stated that he, Debra, and Marla were listed as the owners of the timeshares. In his responses to requests for admission, Stuart stated he owns the timeshares.

[4] The temporary guardian testified that a condo on Midway Road was titled in both Joyce's and Stuart's names. The temporary guardian asked Stuart for the closing statements for the condo, but Stuart did not provide them. The temporary guardian asked Stuart to convey his interest in the property to Joyce, but Stuart did not do so.

(footnotes omitted.)

Stuart challenges five conclusions of law entered by the trial court:

54.     Stuart's personal, unsecured, and undocumented loans from the Trust and the Protected Person's Estate constitute self-dealing.
55.     Stuart's individual ownership interest in assets that belong to the Protected Person constitutes self-dealing.
56.     Stuart's use of funds from the Trust and the Protected Person's Estate to pay off credit cards in his individual name or in the name of entities controlled by Stuart constitutes self-dealing.
57.     Stuart's sale of property from the Trust to his business partner, [omitted], constitutes self-dealing.
58.     Stuart's gift of $200,000 from the Protected Person's Estate to himself constitutes self-dealing.

## C.     Sufficiency of the Evidence Legal Standard

In his fourth issue, Stuart argues the probate court erred by granting Marla's motion in limine because the evidence is legally insufficient to support the court's findings that Stuart's interests were adverse to Joyce's interests and, accordingly, the trial court erred by granting Marla's motion in limine.[5]

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue for which he does not have the burden of proof, he must demonstrate no evidence supports the adverse finding. *Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.—Dallas 2020, pet. denied) (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011)). We will sustain a no evidence complaint only if the record reveals (a) the complete absence

---

[5] Stuart's fourth issue states: "The trial court erred by granting Appellee Marla Margol's Motion in Limine and thereafter excluding Appellant Stuart Margol from the guardianship proceedings." Although not phrased in terms of sufficiency, the substance of his argument is one of sufficiency.

of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.*

When, as here, a trial court makes findings of fact, those findings have the same force and effect as a jury verdict. *See id.* Consequently, unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or no evidence supports the finding. *Id.* Although a party appealing from a bench trial in which the trial court made findings of fact should direct its attack on the sufficiency of the evidence at specific findings of fact rather than at the judgment as a whole, a challenge to an unidentified finding may be sufficient if we can fairly determine from the argument which specific finding the appellant challenged. *Id.* at 351, n.4 (citing *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied)).

We review de novo a trial court's conclusions of law. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* at 157–58. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id*. at 158.

### D. Motion in Limine Legal Standard

Marla filed a motion in limine pursuant to section 1055.001 of the Texas Estates Code, which is titled "Standing to Commence or Contest Proceeding." *See* TEX. EST. CODE ANN. § 1055.001. "[W]hether a party has standing to participate in a guardianship proceeding is a question of law." *In re Guardianship of Miller*, 299 S.W.3d 179, 188 (Tex. App.—Dallas 2009, no pet.) (en banc); *see also In re Guardianship of E.M.D.*, No. 11-20-00042-CV, 2020 WL 6193990, at *3 (Tex. App.—Eastland Oct. 22, 2020, pet. denied) (mem. op.). "When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis." *Guardianship of E.M.D.*, 2020 WL 6193990, at *3 (quoting *In re Guardianship of Bernsen*, No. 13-17-00591-CV, 2019 WL 3721339, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. denied) (mem. op.)).

Section 1055.001(a) states that, except as provided in subsection (b), any person has the right to commence a guardianship proceeding or appear and contest a guardianship proceeding or the appointment of a particular person as a guardian. *See* TEX. EST. CODE ANN. § 1055.001(a). However, a person who has interests adverse to a proposed ward or incapacitated person may not:

> (1) file an application to create a guardianship for the proposed ward or incapacitated person;
> (2) contest the creation of a guardianship for the proposed ward or incapacitated person;
> (3) contest the appointment of a person as a guardian of the proposed ward or incapacitated person; or
> (4) contest an application for complete restoration of a ward's capacity or modification of a ward's guardianship.

*Id.* § 1055.001(b). A court "shall determine by motion in limine the standing of a person who has an interest that is adverse to a proposed ward or incapacitated person." *Id.* § 1055.001(c). The estates code does not define what constitutes an interest adverse to the proposed ward; however, Black's Law Dictionary defines "adverse interest" as "an interest that is opposed or contrary to that of someone else." *Adverse interest*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Guardianship of Bernsen*, 2019 WL 3721339, at *6 ("Because the Estates Code does not define what constitutes an interest adverse to the proposed ward, we must look to its ordinary meaning and appellate court decisions addressing standing challenges to formulate an understanding of how the term has been applied in different contexts.").

Evidence sufficient to support a finding that a person is indebted to the proposed ward may not be sufficient to establish an adverse interest. *See Guardianship of Miller*, 299 S.W.3d at 189 (evidence that applicant is indebted to the ward might disqualify applicant from serving as guardian, but does not automatically rise to the level of an adverse interest sufficient to divest person of standing); *Betts v. Brown*, No. 14-99-00619-CV, 2001 WL 40337, at *4 n.2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.) (not designated for publication) ("the legislature contemplated that a person indebted to the proposed ward would be allowed to participate in the guardianship proceeding, but may be disqualified to serve as guardian"). However, evidence that a person engaged in self-dealing,

particularly when that person was a fiduciary, may establish an adverse interest. *See In re Guardianship of Olivares*, No. 07-07-0275-CV, 2008 WL 5206169, at \*2 (Tex. App.—Amarillo Dec. 12, 2008, pet. denied) (mem. op.); *see also Guardianship of Bernsen*, 2019 WL 3721339, at \*9-10 (trial court did not err by determining party had an interest sufficiently adverse to ward to bar her from participating in guardianship proceeding where evidence showed party engaged in self-dealing after ward was determined to be incompetent).

Stuart argues the trial court applied the wrong standard for determining that he was adverse to Joyce. He posits the correct standard is found in two sentences from *In re Thetford*, 574 S.W.3d 362, 379 (Tex. 2019) (orig. proceeding) (Hecht, J., concurring):

> We would hold that for a guardianship proceeding to be adverse, the applicant's interests must be adverse to the proposed ward's objectives or interests as the proposed ward would have defined them when she had capacity. In the absence of evidence of how the proposed ward would have defined her interests, we think adversity exists when the applicant's interests would not promote and protect the proposed ward's well-being.

*Id.* As a concurring opinion, these sentences do not present binding authority. *See Nabelek v. Bradford*, 228 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also In re Commitment of Jones*, No. 02-18-00019-CV, 2022 WL 325390, at \*6 (Tex. App.—Fort Worth Feb. 3, 2022, pet. denied) (op. on en banc reconsideration). No court has adopted this standard for examining an adverse interest under estates code section 1055.001. We conclude the concurring opinion

on which Stuart relies does not present the current standard for determining whether a person has interests adverse to a proposed ward under section 1055.001. Further, having reviewed *Thetford*, nothing in the majority opinion conflicts with the legal authorities we have cited.

### E.   Adverse Interest Analysis

The *Olivares* opinion from the Seventh Court of Appeals is instructive. Like Stuart, Olivares appealed from an order granting a motion in limine and barring him from participating in the guardianship proceeding that he initiated. *See Olivares*, 2008 WL 5206169, at *1. Olivares owed approximately $80,000 to the ward, his mother, although the "exact sum is unknown because he tracks his loans 'loosely' and 'the nature of the repayment is somewhat far off.'" *Id.* Although well-educated and highly skilled, Olivares lived in the ward's house and was not employed; the ward lived elsewhere. *Id.* The ward had a "finite estate" and Olivares used the ward's assets to "pay for his credit cards, his attorneys, and a lawsuit he initiated against a local municipality, among other things. Simply put, loans from Mrs. Olivares' assets support him, as he acknowledged." *Id.* There was no indication in the record that repayment "will be forthcoming in the near future," but his debts would be forgiven upon the ward's death. *Id.* What the court found "[m]ost troubling" was that "many of the loans and expenditures from that finite estate were made after [Olivares] secured from his mother a power of attorney to act on her behalf." *Id.*

The *Olivares* court concluded:

–12–

So what we have here is evidence from which a factfinder could reasonably conclude that though Olivares has the ability to earn wages and care for himself, he opted to live off his potentially incapacitated mother and expend her finite estate for his own benefit. More importantly, much of this self-dealing occurred after he became her fiduciary via a power of attorney. As her fiduciary, he was obligated to place her interests above his own. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *accord*, *National Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (stating that the attorney-in-fact is an agent and subject to a duty to act solely for the benefit of the principal in all matters connected with the agency). A fiduciary, like Olivares, is also obligated to pursue a course of good faith, fair dealing, honesty, and strict accountability. *Avary v. Bank of America, N.A.*, 72 S.W.3d 779, 791 (Tex. App.—Dallas 2002, pet. denied). Given the evidence of his self-dealing, we cannot hold that the trial court erred in determining that Olivares had an interest sufficiently adverse to his mother to bar him from participating in her guardianship proceeding.

*Id.* at *2 (footnote omitted).

As in *Olivares*, the uncontested findings of fact show Stuart borrowed more than $705,000 from Joyce and the Trust without security or proper documentation. The trial court's unchallenged findings of fact show that Stuart borrowed money from Joyce's estate even though the powers of attorney did not grant Stuart the authority to loan money to himself, make gifts to himself, or engage in self-dealing. As in *Olivares*, the loans benefited Stuart personally; some of the money was used to pay off credit cards titled in Stuart's name or the names of entities he controlled. At the time of the hearing, Stuart could not account for more than $10,000 in interest on the loans. Further, Stuart improperly retained title to timeshares belonging to Joyce despite an order from the probate court that Stuart return those assets to the

–13–

ward. Like Olivares, Stuart has the capacity to support himself; Stuart operates several businesses and describes himself as an expert at real estate transactions and managing businesses. Even so, Stuart used Joyce's estate for his own financial benefit.

The trial court made nearly forty findings of fact related to its order granting Marla's motion in limine. Of those, Stuart challenges one: finding of fact number 19, which states: "There is no evidence that Stuart paid the Protected Person back for any profits gained or losses sustained from the loans." For purposes of this appeal, we will assume the record contains no evidence to support finding of fact number 19.[6] Regardless, given the trial court's unchallenged findings of fact, which are quoted extensively above and are supported by the record, Stuart has not shown that no evidence supports the trial court's conclusion that Stuart had an interest sufficiently adverse to his mother to bar him from participating in her guardianship proceeding. Rather, ample evidence showed his interests were adverse to hers. Accordingly, we conclude the probate court did not err by finding Stuart lacked

---

[6] In his argument supporting his fourth issue, Stuart's brief also states: "Stuart, Debra and Ann Rule, CPA all provided evidence of how the proposed ward would have defined her interests, which were consistent with how Stuart was managing Joyce's Estate. Therefore, the trial court erred by finding Stuart adverse to Joyce, without standing, and granting Marla's Motion in Limine. All findings or conclusions by the Court otherwise are erroneous and ignore the intent of Stuart and Joyce." (internal citation omitted). These sentences are insufficiently specific to challenge any of the trial court's findings of fact. *See Airpro Mobile Air*, 631 S.W.3d at 351 n.4.

In his motion for rehearing, Stuart purports to challenge findings of fact 54 through 58, which he quotes in his motion. However, the "findings of fact" that Stuart quotes are conclusions of law.

standing pursuant to section 1055.001(b) of the estates code and by granting Marla's motion in limine.

Stuart asserts the probate court erred by granting the motion because the findings of fact do not show he engaged in self-dealing, particularly because there is no evidence that his actions were to Joyce's detriment. Although self-dealing may be sufficient to show a party's interests are adverse to the ward's for purposes of section 1055.001, the statute does not require a finding of self-dealing. The probate court must have sufficient evidence showing Stuart has an adverse interest to Joyce, and we conclude he does. *See* TEX. EST. CODE ANN. § 1055.001(b). The unchallenged findings show Stuart abused the powers and control he had over Joyce's estate after Joyce became incapacitated by acting for his own benefit rather than Joyce's benefit.

## F.    Stuart Excluded from Guardianship Proceedings

Stuart argues the probate court improperly excluded him from the guardianship proceedings after it sustained Marla's motion in limine. We disagree. The probate court's order granting Marla's motion in limine states in part: "all pleadings . . . filed by Stuart Margol are hereby dismissed for lack of subject matter jurisdiction." In this appeal, Stuart does not assign error to the portion of the order dismissing his pleadings. However, the result of the trial court doing so is that Stuart was no longer a party to the proceeding after the trial court entered the order. While Stuart asserts he remained an "interested person" who might intervene in the

guardianship proceedings, Stuart never sought to intervene in the proceedings after the trial court entered the limine order. *See* TEX. EST. CODE ANN. § 1055.003 (Intervention by Interested Person).

Once the probate court dismissed Stuart's pleadings, he was not a party of record in the guardianship proceedings. *See In re Guardianship of Thrash*, No. 04-19-00555-CV, 2021 WL 1199056, at *7 (Tex. App.—San Antonio Mar. 31, 2021, pet. denied) (mem. op.). Because Stuart was not a party of record in the guardianship proceedings, we cannot say the trial court erred by excluding him.

We overrule Stuart's fourth issue.

### G. Remaining Issues

In his first three issues, Stuart argues: (1) the order appointing the temporary guardian is void; (2) the probate court abused its discretion by ordering a permanent guardianship over the Estate and Person of Joyce Margol without obtaining necessary jury findings; and (3) the probate court erred by ordering a permanent guardianship without legally sufficient evidence. In his first issue, Stuart challenges the specific person who was appointed as temporary guardian because that person did not have the certification to serve as a temporary guardian. In his second and third issues, Stuart challenges procedures employed by the trial court relating to the creation of a guardianship. Each of Stuart's first three issues relate to the particular phase of the guardianship proceeding concerning the creation of the guardianship and appointment of the guardian. *See In re Guardianship of Benavides*, No. 04-19-

00801-CV, 2020 WL 7365454, at \*4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) (limine order determined a person's standing "for the particular phase of the proceeding concerning creation of the guardianship and appointment of the guardian"). However, Stuart lacked standing to participate in these proceedings. *Id.*; *see also* TEX. EST. CODE ANN. § 1055.001(b)(2)-(3).

Because we affirm the probate court's order granting the motion in limine and finding Stuart lacks standing to contest the guardianship proceeding and the appointment of a guardian, Stuart similarly has no standing to challenge the probate court's orders arising from the guardianship proceeding in this appeal. *See Guardianship of Benavides*, 2020 WL 7365454, at \*4; *see also Guardianship of Bernsen*, 2019 WL 3721339, at \*10 ("Because we affirm the trial court's order granting Lynn's motion in limine and find that Dianna lacks standing to commence or contest this guardianship proceeding, we conclude that Dianna similarly has no standing to challenge the trial court's orders arising from the guardianship proceeding in this appeal."); *In re Guardianship of Benavides*, No. 04-13-00197-CV, 2014 WL 667525, at \*2 (Tex. App.—San Antonio Feb. 19, 2014, pet. denied) (mem. op.) ("Because we affirm the probate court's order granting the motion in limine and finding Leticia lacks standing to contest the guardianship proceeding and the appointment of a guardian, Leticia similarly has no standing to challenge the probate court's orders arising from the guardianship proceeding in this appeal.") (citing *In re Estate of Denman*, 270 S.W.3d 639, 642 (Tex. App.—San Antonio

2008, pet. denied) (appealing party does not have standing to complain of errors that merely affect the rights of others)). *But see Guardianship of Gafford*, No. 01-17-00634-CV, 2019 WL 2127597, at *3 (Tex. App.—Houston [1st Dist.] May 16, 2019, no pet.) (finding no authority "for the proposition that a trial court's grant of a limine order ruling that a party lacks standing to contest an application to appoint another as permanent guardian of the person precludes that party from later appealing the final order appointing a permanent guardian of the person").

Because Stuart lacks standing for the particular phase of the proceeding concerning creation of the guardianship and appointment of the guardian and he lacks standing to challenge the orders arising from the guardianship proceeding on appeal, we do not address his first three issues.

### H.    Conclusion

We affirm the probate court's March 19, 2021 Order Granting Applicant's Motion in Limine; April 22, 2021 Order Appointing Permanent Guardian of the Estate and Legal Counsel for the Permanent Guardian of the Estate; and April 22, 2021 Order Appointing Permanent Guardian of the Person.

210255f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE GUARDIANSHIP OF
JOYCE MARGOL, AN
INCAPACITATED PERSON

No. 05-21-00255-CV

On Appeal from the Probate Court
No. 2, Dallas County, Texas
Trial Court Cause No. PR-20-02238-
2.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the probate court's March 19, 2021 Order Granting Applicant's Motion in Limine; April 22, 2021 Order Appointing Permanent Guardian of the Estate and Legal Counsel for the Permanent Guardian of the Estate; and April 22, 2021 Order Appointing Permanent Guardian of the Person.

It is **ORDERED** that appellee Marla Margol recover her costs of this appeal from appellant Stuart Margol.

Judgment entered this 1st day of September, 2022.