Craig Lee **MARION,** Jr., Appellant,

v.

Alethea Kaye **DAVIS,** as Trustee of the Trust Established Under the Will and Codicil of Homer Baldwin, Appellee.

No. 05–02–01349–CV.

Court of Appeals of Texas, Dallas.

May 22, 2003.

Paul R. Leake, Boyd & Leake, Mesquite, for Appellant.

John J. Little, Little, Pederson & Frankhauser, L.L.P., Dallas, for Appellee.

Before Justices FRANCIS, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

This is a will forfeiture case. In four issues, Craig Lee Marion, Jr. contends that the trial court erred in granting summary judgment in favor of Alethea Kaye Davis, as trustee of the trust established under the will and codicil of Homer Baldwin, on the forfeiture issue. In a single point of error on cross appeal, Davis contends that the trial court erred when it declined to award attorney's fees, expenses, and costs to Davis. Because the trial court did not err, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 1997, Lena Baldwin, the eighty-eight-year-old wife of Homer Baldwin, became totally incapacitated. Lena was hospitalized for a few months, and then, beginning in April 1997, she was cared for by Davis (Homer's niece and a licensed vocational nurse) in Davis's home. In September 1997, Homer Baldwin executed a codicil to his 1994 will. The codicil stated that his wife Lena had expressed a desire not to be placed in a nursing home facility and that, accordingly, Homer had made arrangements for her care outside of a home. The codicil established a trust of Homer's entire estate, the principal and interest of which was to be used to care for Lena in a "home care environment to the

extent of ... [the] trust estate." Davis and her mother Joy Lewis were appointed co-trustees.[3] The codicil provided that the trust estate remaining at Lena's death would be distributed to the three residuary beneficiaries of Homer's 1994 will, who were Lewis, Marion (Lena's nephew), and Michele Mertes. Article VII of the codicil provided a restriction to the bequest:

> In the event that any of the beneficiaries or devisees to my Will should attempt to place my wife in a nursing facility and defeat my plan to continue home care for my wife before all of the Trust has been used for her care, his or her share of my estate and trust remainder shall be forfeited and descend to the other of my beneficiaries.

Homer died in 1999. In April 1999, Marion applied for and was appointed the temporary guardian of the person and estate of Lena. In May 1999, Davis arranged for Lena to be moved back to Lena's home and to be cared for by nurses from a private nursing service. Marion applied for and, in June 1999, was appointed Lena's permanent guardian. In June 1999, Lena was admitted to a hospital. Lena's treating physician recommended that Lena be placed in a nursing home on her discharge from the hospital. In August 1999, Marion had Lena placed in a nursing home. While he was Lena's guardian, Marion forwarded medical bills to Davis seeking payment from the trust. Lena remained in a nursing home until she died in March 2000.

Davis filed this suit pursuant to the Uniform Declaratory Judgments Act, seeking

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. Lewis resigned as trustee in November 1999 and died in December 2001.

a declaration that Davis, as trustee, had no obligation to provide funds for Lena's maintenance while she was in a nursing home and that, pursuant to the codicil, Marion had forfeited all his interest in Homer's estate and trust. The suit named as parties Davis, as independent executrix of Lewis's estate, Marion, and Mertes.[4] Davis requested attorney's fees and costs. Marion answered, contending that the codicil's forfeiture provision was against public policy and, therefore, null and void. He also contended that Lena's placement in a nursing home was reasonable and necessary as a result of her medical condition and in accordance with her physician's recommendation. He raised the affirmative defenses of necessity, waiver, estoppel, and impossibility of performance. Further, he pleaded that any violation of the forfeiture provision was excused by Davis's bad faith or breach of fiduciary duties to Lena. Marion also filed a counterclaim for an accounting and distribution of the trust assets to the beneficiaries. He requested attorney's fees pursuant to the Uniform Declaratory Judgments Act.

Davis's first motion for summary judgment, to which Marion responded, was granted in part, confirming Davis's decision not to provide funds for nursing home care, but denied as to the forfeiture issue.[5] In its order, the court specifically found that the provisions of the trust were not against public policy. Davis filed a second motion for summary judgment on the forfeiture issue. Marion moved for summary judgment on grounds that he was entitled to summary judgment as a matter of law because the evidence established as affirmative defenses that he acted solely in his capacity as guardian in placing Lena in a

nursing home, he placed her there out of necessity, and the placement was in good faith and based on probable cause. Davis responded and filed a no-evidence summary judgment motion, contending that Marion had no evidence that his violation of the forfeiture provision was excused and no evidence of his affirmative defenses of necessity, waiver, estoppel, and impossibility performance.

In its final judgment, the trial court (1) granted Davis's second motion for summary judgment and Davis's no-evidence summary judgment motion as to Marion's defenses, (2) denied Marion's motion for summary judgment, and (3) ordered that Marion forfeited any and all interest in the trust or Homer's estate because he caused Lena to be placed in a nursing home facility. The trial court also ordered that Marion take nothing on his counterclaim, including his request for attorney's fees. Further, the trial court ordered that it was equitable and just that Davis and Marion each bear their own attorney's fees and expenses and that each party was to bear its own costs. This appeal followed.

## FORFEITURE

In four issues, Marion argues that the trial court erred in granting Davis's motions for summary judgment and denying his motion for summary judgment by declaring Marion forfeited any and all interest in the trust and estate of Homer. Specifically, he contends that Article VII of the codicil violates public policy, the restriction in the codicil does not apply to him because he acted as a guardian, and he established as a matter of law his de-

4. See TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (Vernon 1997) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties.")

5. Marion does not challenge the payment decision, and we do not consider that issue further.

fenses of necessity and good faith and probable cause.

## Standard of Review and Applicable Law

We apply the established standards for reviewing a summary judgment. In a traditional summary judgment, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* We render the judgment the trial court should have rendered. *Id.*

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills Rests., Inc.*, 12 S.W.3d at 833 (no-evidence summary judgment).

■ A trustee may have a declaration of rights in respect to a trust to determine any question arising in the administration of the trust, including questions of construction of wills or to determine rights regarding fiduciary fees and the settling of accounts. Tex. Civ. Prac. & Rem.Code Ann. § 37.005(3), (4) (Vernon Supp.2003). In that regard, every person has the right to dispose of his property by will as he sees fit, regardless of how the property is distributed in the will. *Gunter v. Pogue*, 672 S.W.2d 840, 842 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.); *Perry v. Rogers*, 52 Tex.Civ.App. 594, 114 S.W. 897, 899 (1908, no writ). This right is subject to limitation by law or public policy. *Stewart v. RepublicBank, Dallas, N.A.*, 698 S.W.2d 786, 787 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.).

■ The primary object of inquiry in interpreting a will is determining the intent of the testator. *Gee v. Read*, 606 S.W.2d 677, 680 (Tex.1980). To determine the testator's intent, the will must be construed as a whole, so as to give effect to every part of it. *Id.* As a general rule, forfeiture provisions, or *in terrorem* clauses, in a will are to be construed strictly, and a breach of such clause should be declared only when the acts of the parties come within the express terms of the clause. *Id.* (citing *Sheffield v. Scott*, 662 S.W.2d 674, 676 (Tex.App.-Houston [14thDist.] 1983, writ ref'd n.r.e.)).

## Public Policy

■ In his fourth issue, Marion contends that the trial court erred in granting in part Davis's first motion for summary judgment in declaring that the provisions of the trust were not against public policy. In his response to Davis's first motion, Marion responded that the testamentary trust was against public policy. First, Marion contended that the trust violated public policy because the trust funds were not adequate for the "necessities of life" such as food, clothing, shelter, utilities, or

medical attention outside of a nursing home. However, Marion provided no evidence that the trust funds were inadequate to pay for Lena's care as directed by the trust provisions. Therefore, Marion failed to establish this public policy argument as a matter of law.

Next, Marion argued that the trust offended public policy because it prevented him as guardian from faithfully performing his duties to Lena as provided in section 767 of the probate code. *See* TEX. PROB. CODE ANN. § 767 (Vernon 2003) (providing for powers and duties of guardian of the person). Marion contends that the trust provisions restricted his right to exercise his powers and duties for Lena's health, welfare, and protection, and to do those things that were in her best interest and according to the treating doctor's opinions and recommendations. In addition, Marion relies on *Stewart v. Republicbank, Dallas, N.A.*, 698 S.W.2d 786 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.), to argue that the trust provisions are invalid because they offend public policy.

██ In *Stewart,* the court considered a will provision by which children would forfeit trust property if certain persons were appointed and acted as guardians of the children. The probate court appointed those persons as the children's guardians. The trial court construed the codicil as a forfeiture and void against public policy. In *Stewart,* the trust provision sought to limit the powers of the court to appoint a proper guardian and would forfeit a gift without any act by the beneficiary. *Id.* at 787. Here, however, in support of her motion for summary judgment, Davis produced evidence that Marion applied to the probate court to become Lena's guardian. Thus, Marion voluntarily undertook the responsibilities of guardian, and he chose to place Lena in a nursing home in violation of the trust terms. Therefore, this case is distinguishable from *Stewart.* We conclude that the trial court did not err in ruling that the trust provisions were not against public policy. We resolve Marion's fourth issue against him.

## Construction of the Provision

In his first and second issues, Marion contends that the trial court erred in granting Davis's second motion for summary judgment and denying Marion's motion for summary judgment in declaring that Marion had forfeited his interest in the trust and estate because Marion placed Lena in a nursing home. In these two issues, Marion argues that Article VII's restrictive language does not apply to him because he acted in his capacity as Lena's guardian.

██ It is undisputed that Marion caused Lena to be placed in a nursing home and that funds remained in the trust when Lena was placed in the nursing home. According to the plain and unambiguous language of Article VII, Marion forfeited his share of the estate and trust remainder as a beneficiary. To support his argument that the forfeiture provision does not apply to him because he acted in his capacity as a guardian of Lena's person in placing her in a nursing home, Marion relies on *Conte v. Conte,* 56 S.W.3d 830 (Tex.App.-Houston [1st Dist.] 2001, no pet.). In *Conte,* a co-trustee sought a declaration that her action to remove another co-trustee did not violate the *in terrorem* or no-contest clause of a trust. The plaintiff argued that the clause prohibited certain actions by a "beneficiary" but did not address actions by a co-trustee, and therefore the plaintiff could bring an action to remove another co-trustee without violating the clause. The court agreed that the clause's language did not prohibit or even address actions by a trustee. *Id.* at 832. But the court also noted that because the trust was

silent regarding the removal of a trustee, even a beneficiary who sought removal of a trustee would not violate the *in terrorem* clause. Thus, the court strictly construed the clause to conclude that it had not been violated. In contrast, the forfeiture clause here is not silent regarding Marion's actions on which Davis sought a declaratory judgment: Marion was a beneficiary who placed Lena in a nursing facility and defeated Homer's plan to continue her home care until all of the trust had been used for her care. Thus, this case is distinguishable from *Conte*. Strictly construing the forfeiture clause, as we must, we conclude that Marion's act came within the clause's express terms. *See Gunter*, 672 S.W.2d at 842. Because the trial court did not err in disposing of Davis's second motion and Marion's motion by declaring that Article VII applied to Marion and resulted in a forfeiture against Marion, we resolve Marion's first and second issues against him.

### The Defenses

In his third issue, Marion contends that the trial court erred in denying his motion for summary judgment and in granting Davis's no-evidence summary judgment motion on the defenses of necessity and good faith and probable cause. Specifically, Marion argues that he established as a matter of law his affirmative defenses of necessity and good faith and probable cause.

■ As to necessity, Marion argues that he was entitled to summary judgment because his evidence showed that Lena's treating physician advised him that Lena's only option after her discharge from the hospital was nursing home care and that Marion acted on this medical recommendation. Thus, he contends he established that a necessity existed in these circumstances to override Homer's wishes in the codicil. Marion relies primarily on *Ing-* *rum v. Ingrum*, 520 S.W.2d 535 (Tex.Civ. App.-San Antonio 1975, writ ref'd n.r.e.). In *Ingrum*, a will provided that the testator's debts were to be paid and that certain property was not to be sold. However, the trial court found, and the *Ingrum* court affirmed, that a necessity existed to sell the property to discharge the will's provision for the payment of debts and claims. *Id.* at 538; *accord Stephens v. Dennis*, 72 S.W.2d 630, 634 (Tex.Civ.App.- Eastland 1934, writ ref'd). Here, Marion's necessity defense relates to a conflict between Marion's actions and the provisions of the codicil expressing Homer's wishes, not the necessity created by conflicting provisions that need to be resolved. Thus, we conclude that a necessity defense does not apply in these circumstances.

■ Likewise, Marion argues that he was entitled to summary judgment because his evidence that he followed Lena's treating physician's recommendations established his defense of good faith and probable cause as a matter of law. However, Marion's authorities discuss the application of a good faith and probable cause defense in a will contest case. *See Calvery v. Calvery*, 122 Tex. 204, 55 S.W.2d 527, 529–30 (1932) (devisee's suit to construe will and establish title to devised property was a suit brought in good faith and probable cause "to ascertain the real purpose and intention of the testator and then to enforce such purpose and intention" and was not "an effort to vary the purpose and intention of the will"); *Gunter*, 672 S.W.2d at 843 (noting that nocontest clauses were enforced to allow intent of testator to be given full effect and avoid vexatious litigation but "those who are attempting, in good faith, to determine the true intent of the testator should not be punished upon a showing that they brought a contest in good faith and had probable cause for bringing such contest").

Marion did not bring an action to determine Homer's true intention. Thus, any defense of good faith and probable cause does not apply to these circumstances.

Because we conclude that Marion did not establish his defenses as a matter of law, we conclude the trial court did not err in denying his motion for summary judgment. Therefore, we need not address Marion's arguments that he raised a fact issue as to his affirmative defense of necessity in response to Davis's no-evidence summary judgment motion. *See* TEX. R.APP. P. 47.1. We resolve Marion's third issue against him.

## ATTORNEY'S FEES, EXPENSES, AND COSTS

■■■ In a single point of error on cross appeal, Davis contends the trial court erred in declining to award attorney's fees, expenses, and costs to Davis. The trial court determined that it was equitable and just that each party bear its own attorney's fees and expenses. The Uniform Declaratory Judgments Act provides that the court may award "costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997). Therefore, the grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). Whether the attorney's fees are reasonable and necessary are fact questions; whether the attorney's fees are equitable and just are matters of law, which come within the trial court's discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends upon

what is equitable and just, and the trial court's power is discretionary in that respect. *Sharp v. Hobart Corp.,* 957 S.W.2d 650, 654 (Tex.App.-Austin 1997, no pet.).

■■■ However, Davis did not request any findings of fact on the attorney's fees issue, and none were filed. Without findings of fact establishing the basis for the trial court's exercise of discretion, we cannot conclude as a matter of law that the court abused its discretion in declining to award attorney's fees. *See id.* at 654. Further, Davis argued in her application that any amount awarded would primarily benefit trust beneficiaries other that Davis and in prosecuting this action, she was discharging her fiduciary duties. In his response, Marion argued that Davis's request for attorney's fees should be denied because Marion would forfeit his share of the remaining trust, an award against Marion would be punitive, he attempted in good faith and with probable cause to take care of Lena in what he honestly believed to be in her best interest, and he had incurred substantial attorney's fees in defending the action. The trial court could have considered Marion's arguments in making the attorney's fees decision. Because Davis has not shown an abuse of discretion by the trial court, we deny Davis's point of error as to the attorney's fees issue.

■■■ Next, Davis argues that the trial court's failure to award taxable costs violated rules of civil procedure 131 and 141. Rule 131 provides that the successful party to a suit shall recover all costs incurred therein, except where otherwise provided. TEX.R. CIV. P. 131. Rule 141 provides that the court may otherwise adjudge costs for good cause, to be stated on the record. TEX.R. CIV. P. 141. Under rule 141, the trial court may state good cause in a written order or judgment, or orally in a hearing. *Fiesta Mart, Inc. v.*

*Hall,* 886 S.W.2d 440, 442 (Tex.App.-Houston [1st Dist.] 1994, no writ) (citing *Dover Elevator Co. v. Servellon,* 812 S.W.2d 366, 367 (Tex.App.-Dallas 1991, no writ)). Failure to state on the record a finding of good cause to vary from rule 131 constitutes an abuse of discretion. *Finlay v. Olive,* 77 S.W.3d 520, 528 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In her application for attorney's fees and costs, Davis requested that all costs should be taxed against Marion. After the July 8, 2002 hearing on the application, the trial court decided to assess costs against the party incurring them and ordered that each party bear its own costs. Davis contends that she is entitled to judgment awarding her the taxable costs because she was the successful party on all issues. She complains there is no statement of good cause. However, while there is no statement of good cause in the judgment, she made no request for findings of fact or conclusions of law on the attorney's fee issue, nor did she request a reporter's record of the July 8, 2002 hearing. Davis is required to bring a record showing that the trial court abused its discretion, that is, that it failed to state good cause on the record. *See Hall,* 886 S.W.2d at 442 (burden on appellant to bring record showing error requiring reversal). A judge is presumed to have acted within his discretion unless the record discloses to the contrary. *Navistar Int'l Corp. v. Valles,* 740 S.W.2d 4, 6 (Tex.App.-El Paso 1987, no writ). At the hearing, the trial court could have made an oral statement regarding good cause for assessment of costs. *See Hall,* 886 S.W.2d at 442. Because Davis failed to bring a complete reporter's record, and failed to comply with rule of appellate procedure 34.6(c) regarding a partial reporter's record, we must presume that the omitted portions are relevant to the disposition of the appeal. *Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990) (per curiam); *Hall,* 886 S.W.2d at 442–43; *see Murray v. Devco, Ltd.,* 731 S.W.2d 555, 557 (Tex. 1987) (noting that, generally, in absence of reporter's record, it must be presumed that sufficient evidence was introduced to support court's judgment); *Sandoval v. Comm'n for Lawyer Discipline,* 25 S.W.3d 720, 722 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding reviewing court must presume omitted evidence supported trial court's discretionary sanction decision when party failed to bring reporter's record of sanction hearing at which court could have considered factors regarding professional misconduct); Tex.R.App. P. 34.6(c). Because Davis has not shown an abuse of discretion by the trial court, we deny Davis's point of error as to the costs issue.

## CONCLUSION

Because of our disposition of Marion's and Davis's issues, we affirm the trial court's judgment.