

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00579-CV

Jay Kay **BEAR** Ltd,
Appellant

v.

Patty **MARTIN**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-11890
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Jason Pulliam, Justice

Delivered and Filed:  November 4, 2015

APPEAL DISMISSED FOR WANT OF JURISDICTION; TRIAL COURT JUDGMENT AFFIRMED ON CROSS-APPEAL

### PROCEDURAL HISTORY

This appeal arises from a suit brought by Patty Martin against Jay Kay Bear Ltd., John Killian and others.  In the underlying action, Martin asserted multiple causes of action arising from the parties' competing lien interests in 4 pieces of real estate.  After an 8-day bench trial, the trial court entered a final modified judgment in which it denied relief on all of Martin's causes of action. In addition, the trial court entered a final modified declaratory judgment in which, among other

declarations, it declared a lien held by Martin on the 8.09 acres "is superior to the Jay Kay Bear, Ltd. lien…."

Jay Kay Bear and John Killian appealed, and Martin filed a cross-appeal. Both appeals pertain only to the trial court's final modified judgment and declaratory judgment with regard to the 8.09 acre property. The appeal brought by Jay Kay Bear and John Killian, and briefed by only Jay Kay Bear, challenges the trial court's declaratory judgment on the 8.09 acres, only. The cross-appeal brought by Martin challenges the trial court's judgment in which it denied relief on Martin's fraud and fraudulent lien causes of action against John Killian and challenges the trial court's denial of Martin's request for attorneys' fees pertaining to the declaratory judgment. Martin also challenges on appeal the trial court's denial of Martin's Motion to Modify the Modified Judgment. Thus, while the underlying suit involved 4 pieces of property and several causes of action against multiple defendants, this appeal pertains only to Martin, Jay Kay Bear and Killian's specific challenges to the trial court's judgment and declaratory judgment related to only the 8.09 acre tract.

### FACTUAL BACKGROUND

Plaintiff in the underlying suit, Patty Martin and her mother, Ellen Naylor, engaged in a business in which they loaned money for risky real estate transactions. On October 24, 2003, Bexar Mercantile, Inc. ("BMI") purchased the 8.09 acres at issue and borrowed money to finance that purchase: $325,000 from the Ellen Watson Naylor Living Trust and $74,000 from the seller, Zyco, Inc. It is undisputed that the Naylor Trust held a first lien for the purchase money it loaned BMI, and Zyco held a second lien for the purchase money it loaned BMI. The Naylor Trust and Zyco both recorded their deeds of trust, creating corresponding liens, on October 28, 2003.

Subsequently, CPA Gary Davidson was appointed guardian of Ellen Watson Naylor's estate and, in that role, discovered a significant amount of money owed to Naylor as a result of her real estate transactions. In 2005, Davidson, as guardian of Naylor's estate, and Martin sued several defendants, including BMI, seeking recovery of funds allegedly owed them from these various real estate transactions ("the first lawsuit"). Later, in a related action, Howard Alwais, Myrna Alwais, and Brenda Moczygemba sued Martin for partition of their interests in some of the same property involved in the first lawsuit ("the second lawsuit"). These two lawsuits were consolidated. The plaintiffs in the second lawsuit were represented by John Killian, who was also the general partner of Jay Kay Bear.

On January 24, 2008, all parties participated in mediation and reached a settlement agreement. Killian attended the mediation as the Alwais's and Moczygemba's attorney. As part of settlement terms reached during mediation, Martin and Davidson agreed to settle their claims against BMI for $390,000, to be paid over three years, in addition to some additional amount due immediately. As collateral for this payout agreement, BMI pledged its interest in four tracts of land, including the 8.09 acres that is the subject of this underlying action and on which Naylor and Zyco already held purchase money liens.

At the same time, but separate from the settlement agreement reached through mediation, Jay Kay Bear, through Killian, agreed to loan BMI $150,000 to satisfy its immediate obligations under the settlement agreement. Allegedly unknown to Martin and Davidson, Jay Kay Bear also took a lien on the same 8.09 acre tract as collateral for this loan.

Although the parties reached a settlement agreement on January 24, 2008, additional disputes arose regarding the parties' obligations under the settlement agreement. The parties required a second mediation and court intervention to finalize the settlement documents. On May

28, 2008, the trial judge ordered all of the parties to sign the documents supporting the settlement agreement and the real estate transfers dictated by it and required delivery of the documents to BMI's attorney by June 3, 2008.

Pursuant to the settlement agreement, on June 3, 2008, the Naylor Trust signed a release of lien on its 1st lien, and filed the release on June 23, 2008. Also on June 3, 2008, BMI signed two sets of promissory notes and deeds of trust pertaining to the 8.09 acres. First, allegedly unknown to Davidson and Martin, BMI borrowed $150,000 from Jay Kay Bear and secured the promissory note with a deed of trust on the 8.09 acres (the "2008 Jay Kay Bear Deed of Trust"). BMI used this money to pay Martin a portion of the money due immediately under the settlement agreement.

On the same day, pursuant to the terms of the settlement agreement, BMI gave Martin a promissory note for $390,000 and secured that promissory note with a deed of trust ("2008 Martin Deed of Trust") on the 8.09 acres. [1] Although BMI signed both promissory notes and deeds of trust on June 3, 2008, it did not return these documents to the respective parties until June 25, 2008. Allegedly unknown to Davidson and Martin, Jay Kay Bear filed its deed of trust and lien on the 8.09 acre tract on June 25, 2008. Patty Martin filed her deed of trust and lien on the 8.09 acre tract the next day, on June 26, 2008.

At the same time, on June 23, 2008, unrelated to the settlement actions, Zyco borrowed $75,000 from Jay Kay Bear and pledged as collateral the promissory note and purchase-money

---

[1] According to the 2008 Martin Note, BMI actually owed money to "GARY A. DAVIDSON, Guardian of the Estate of Ellen Watson Naylor, and Patty Martin, as Trustee of the Ellen Watson Naylor Living Trust." During the course of this litigation, Ellen Watson Naylor passed away. After her death, Davidson, as guardian of the estate, transferred Naylor's rights and obligations to Patty Martin. The parties do not dispute that all of the rights and obligations that once belonged to Naylor merged with the rights and obligations of Martin. For clarity's sake, the parties referred to these documents as "the Martin Note" and "the Martin Deed of Trust," even though those documents did not actually name Martin, Individually.

lien (now 1st lien through settlement-agreement transactions) on the 8.09 acres. Jay Kay Bear recorded the transfer of lien from Zyco to itself, on June 25, 2008, the same date Jay Kay Bear recorded its deed of trust and lien on the same 8.09 acres that it obtained through the loan to BMI. Killian, who acted as Alwais's and Moczygemba's attorney in the second lawsuit and settlement negotiations, executed the documents supporting this personal transaction as the General Partner of Jay Kay Bear.

Later, BMI defaulted on the loans from Jay Kay Bear and Martin secured by the individual deeds of trust on the 8.09 acres. On February 2, 2010, Martin foreclosed on her deed of trust held on the 8.09 acres. On the same day, Killian, acting on behalf of Jay Kay Bear, foreclosed on its deed of trust held on the 8.09 acres. A dispute ensued regarding which party held the superior lien.

Similarly, BMI defaulted on the purchase-money loan from Zyco, secured by the first lien (2003 Zyco Deed of Trust), which was transferred to Jay Kay Bear in June 2008. Likewise, Zyco defaulted on the $75,000 loan from Jay Kay Bear that was secured by the same corresponding 2003 Zyco Deed of Trust. Based upon these two defaults on the promissory notes, on April 6, 2010, Jay Kay Bear also foreclosed on this lien acquired through the 2003 Zyco Deed of Trust.

Following these multiple foreclosures on the 8.09 acre tract, and the ensuing dispute regarding lien priority on the subject 8.09 acre tract and three other properties, on July 21, 2011, Martin filed this underlying suit against Killian and Jay Kay Bear and others. Martin alleges in this underlying suit that she was unaware of Killian's multiple roles in the settlement negotiations and of his and Jay Kay Bear's multiple avenues of acquiring a lien on the 8.09 acre tract.

On May 14, 2013, during this underlying litigation but prior to trial, and in light of the fact that lien priority on the subject 8.09 acres was a matter being litigated, Jay Kay Bear transferred

all of its rights, title and interest in the 8.09 acres and two other tracts of land to a non-party, 281

Property, Ltd.[2]  Trial in this suit commenced in September 2013.  The Modified Final Judgment

was entered on May 20, 2014.

ANALYSIS

I.        APPEAL: JAY KAY BEAR V. MARTIN

*Issue One:      Standing*

As an initial matter, this court must address an issue raised for the first time on appeal by

Appellee Patty Martin: Whether Jay Kay Bear has standing to assert this appeal because it

transferred all of its interest in the subject 8.09 acres prior to trial.[3]  Martin attaches verified

documents to its appellate brief establishing this transfer by Special Warranty Deed from Jay Kay

Bear to 281 Property, a non-party.

In response, Jay Kay Bear does not deny it transferred its interest in the 8.09 acres through

Special Warranty Deed on May 14, 2013 and does not challenge the veracity of the documents

produced establishing such transfer.  Jay Kay Bear contends:

> [t]he trial court's erroneous finding that the June 26, 2008 Martin lien was superior
> to the 'June 23, 2008 [sic]' Jay Kay Bear lien prejudices Jay Kay Bear's interests.
> That is because, if the trial court's lien priority finding is correct, then Jay Kay Bear
> lacked an interest in this property that he [sic] could have transferred after Martin's
> February 2, 2010 foreclosure.  That finding affects, diminishes, and impairs Jay
> Kay Bear's ownership interest in this property in 2013.  That finding therefore
> prejudices Jay Kay Bear's interests.  For that reason, Jay Kay Bear has standing to
> challenge it on appeal regardless of whether it still owns this property.

---

[2] The appellate record does not reflect whether this transfer was brought to the attention of the trial court prior to trial.
Martin alleges on appeal she was not aware of the transfer until after the trial court's execution of a final judgment.
[3] Although this issue is raised for the first time on appeal, this court recognizes this is the first opportunity Martin
could have raised the issue.

In its post-submission briefing, Jay Kay Bear adds to this argument, stating, "this lawsuit challenges the validity of a foreclosure sale …. Here, Jay Kay is the lender who foreclosed; Martin's interest was foreclosed upon."

*Applicable Law*

The doctrine of standing pertains to a party's right to make a legal claim and exists to identify lawsuits appropriate for judicial determination. *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Because standing is implicit in the concept of subject matter jurisdiction, it is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). Thus, a party's lack of standing may be challenged for the first time on appeal, even by a court acting *sua sponte. See id.* at 445–46. A court of appeals may "ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction." TEX. GOV'T CODE ANN. § 22.220(c) (West Supp. 2014). Therefore, matters outside the appellate record that establish justiciability, or the lack thereof, are reviewable by an appellate court. *Woodland v. Wisdom*, 975 S.W.2d 712, 716 (Tex. App.—Texarkana 1998, no pet.); *see also Bloom v. Bloom*, 935 S.W.2d 942, 946 (Tex. App.—San Antonio 1996, no writ).

Standing may be lost for appeal "if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Jack Jones Hearing Centers, Inc. v. State Comm. of Examiners in Fitting & Dispensing of Hearing Instruments*, 363 S.W.3d 911, 914–15 (Tex. App.— Austin 2012, no pet.) (appellant must show that its interest has been prejudiced or adversely affected by judgment it seeks to appeal). "When there has ceased to be a controversy between the litigating parties, the decision of an appellate court would be a mere academic exercise. When events occur after a judgment which renders the issue before the appellate court moot, the court

may not decide the appeal." *Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex. App.—El Paso 1994, no pet.) (citing *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570–71 (Tex. 1990)).[4]

If standing is challenged on appeal, the appellant bears the burden of making a prima facie showing it holds a legally cognizable interest that is prejudiced or injuriously affected by the trial court's judgment. *In re Estate of Denman*, 270 S.W.3d 639, 642 (Tex. App.—San Antonio 2008, pet. denied); *Gorman v. Gorman*, 966 S.W.2d 858, 864 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

"Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). While a party of record is generally entitled to appellate review, the right of appeal rests only in an aggrieved party to a lawsuit. *See Trojacek v. Estate of Kveton*, No. 14-07-00911-CV, 2009 WL 909591, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 7, 2009, no pet.); *Southern Nat'l Bank of Houston v. City of Austin*, 582 S.W.2d 229, 235–36 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.). An aggrieved party is one having any interest recognized by law in the subject-matter of the judgment which is injuriously affected or prejudiced. *Southern Nat'l Bank of Houston*, 582 S.W.2d at 235–36 (citations omitted); *see also Cty. of El Paso v. Ortega*, 847 S.W.2d 436, 442 (Tex. App.—El Paso 1993, no writ). An interest recognized by law, or a justiciable interest, is one capable of being recognized, litigated or brought before a court. BLACK'S LAW DICTIONARY, pp. 276, 882 (8th ed.) (defining *"cognizable"* and *"justiciable"*). "In

---

[4] In its post-submission brief, Jay Kay Bear quotes a footnote in *Tex. Ass'n of Bus.* stating, "[s]tanding is determined at the time suit is filed in the trial court, and subsequent events do not deprive a trial court of jurisdiction." *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9. While this language does serve Jay Kay Bear's purpose, it is taken out of context of the facts in that case, in which that appellate court was reviewing a party's standing to bring the lawsuit. *See id.* As used, this quote is contrary to well-settled precedence, which holds standing may be lost for appeal if events occur during litigation that cause the controversy to cease to exist or causes a party to lack a legally cognizable interest in the trial court's judgment. *See Gen. Land Office*, 789 S.W.2d at 570–71; *Jack Jones Hearing Centers, Inc.*, 363 S.W.3d at 915; *Hanna*, 876 S.W.2d at 457.

order to be a justiciable interest, there must be an actual controversy between parties who have conflicting personal stakes." *Texas Dep't of Pub. Safety v. Kelton*, 876 S.W.2d 450, 452 (Tex. App.—El Paso 1994, no writ); *County of El Paso*, 847 S.W.2d at 442.

*Application*

It is not disputed that at the beginning of the underlying litigation, Jay Kay Bear held a justiciable interest in the 8.09 acres and an active controversy existed regarding which party held the superior lien. Jay Kay Bear was a party to the underlying lawsuit and actively participated in litigation because it held a legally cognizable interest in the subject 8.09 acres and the 3 other properties at issue at the time suit was filed. However, based upon Jay Kay Bear's actions during litigation, in which it divested itself of all rights and interest in the 8.09 acres, Martin challenges Jay Kay Bear's standing to appeal the trial court's declaratory judgment. Because this issue challenges this court's subject matter jurisdiction and may be raised for the first time on appeal, it will be addressed. Jay Kay Bear, as the appellant, bears the burden of proof to show it holds standing to appeal. *See In re Estate of Denman*, 270 S.W.3d at 642; *Gorman*, 966 S.W.2d at 864.

To satisfy its burden of proof to show it holds standing to bring this appeal from the trial court's declaratory judgment, Jay Kay Bear must make a prima facie showing that its own justiciable interest is prejudiced by the final judgment. *See In re Estate of Denman*, 270 S.W.3d at 642; *Gorman*, 966 S.W.2d at 864. In response to the issue raised by Martin, Jay Kay Bear makes no prima facie showing, but only asserts argument in support of a finding that it has standing to bring this appeal. Jay Kay Bear does not contest the evidence presented to challenge its standing and does not present controverting or mitigating evidence. Jay Kay Bear simply asserts this court should not consider the evidence presented to challenge standing because it is presented for the first time on appeal.

Because this court may review material outside the appellate record if necessary to ascertain matters essential to the exercise of appellate jurisdiction, and in the absence of denial, dispute or contradiction, this court will consider the documents submitted with Martin's appellate response brief. *See* TEX. GOV'T CODE ANN. § 22.220(c); *see also Woodland*, 975 S.W.2d at 716. The Certified Special Warranty Deed dated May 9, 2013 and filed May 14, 2013 in Vol. 16106, p. 856 of the County Clerk records shows Jay Kay Bear transferred its interest in the subject 8.09 acres to 281 Property, Ltd. Because it transferred its interest by Special Warranty Deed, Jay Kay Bear conveyed all rights, title and interest it held on that date, "subject to any and all valid easements and rights-of-way of record, all presently recorded restrictions, reservations, covenants, conditions and other instruments other than liens and conveyances, filed of record, to the extent, if any, that they are valid and subsisting against the Property or any part thereof." This transfer, though by Special Warranty Deed, left Jay Kay Bear no residual interest in the subject 8.09 acres.

On its face, the trial court's declaratory judgment from which Jay Kay Bear asserts this appeal pertains only to the 8.09 acres that Jay Kay Bear transferred on May 14, 2013. Regardless of the lien-priority determination of the declaratory judgment, Jay Kay Bear does not hold a present interest in the property and did not hold any interest in the 8.09 acres at the time the trial court entered the declaratory judgment. By appealing the trial court's declaratory judgment, Jay Kay Bear seeks to protect its past interest in the 8.09 acres and protect 281 Property's present interest. Jay Kay Bear's interest that it once held in the past is not a legally cognizable interest, nor an interest in the subject matter of the litigation that is recognized by law. *See Trojacek*, 2009 WL 909591, at *3-4; *In re Estate of Denman*, 270 S.W.3d at 642; *Gorman*, 966 S.W.2d at 864. In addition, Jay Kay Bear cannot bring this appeal to protect the interest it transferred to 281 Property because an appealing party may not complain about errors that merely affect the rights of others. *See Torrington Co.*, 46 S.W.3d at 843; *Gorman*, 966 S.W.2d at 864.

Although Jay Kay Bear asserts its transfer to 281 Property created a contractual obligation to defend the title it conveyed, this asserted contractual obligation does not confer legal standing to do so. Jay Kay Bear's use of *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000), as support for this argument is misplaced because *Torrington* resolved the issue whether an indemnity agreement conferred standing upon the indemnitor to challenge a judgment it was obligated to pay. In *Torrington*, all parties to the indemnity agreement were parties to the suit. The indemnity agreement existed prior to suit, no party intentionally divested itself of any interest in a subject being actively litigated, and the indemnitor held a present, "clear justiciable interest in appealing the judgment …." *See Torrington Co.*, 46 S.W.3d at 843–44.

In its post-submission briefing, Jay Kay Bear likens this case to *Goswami v. Metro Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1998) and classifies this action as a "challenge [to] the validity of a foreclosure sale." In so doing, Jay Kay Bear attempts to place itself within a body of law that allows a party to retroactively challenge an alleged wrongful foreclosure. In such cases, that challenging party, obviously, has no present interest in the subject property but is allowed to challenge the veracity of the foreclosure stripping that interest.

The factual posture and legal issues presented in this case clearly do not fall within this body of law addressed in *Goswami*. The subject of the underlying lawsuit, and even the subject of this appeal, is not a challenge to the validity of a foreclosure sale. Rather, the dispute involves multiple parties' competing lien interests in property and determination of this lien priority. Further, Jay Kay Bear's account that "Jay Kay is the lender who foreclosed; Martin's interest was foreclosed upon" is a misstatement of the facts in this case. For this reason, the body of law followed in *Goswami* is inapplicable under these facts.

Jay Kay Bear also argues "its legal and equitable interest will be affected by the propriety of its foreclosure sale" because "[i]t believed it owned the property outright after its …

foreclosure" and "reasonably believed it owned all the legal and equitable property interest in the 8.09 acres, and it acted accordingly." Jay Kay Bear contends the trial court's judgment amounts to "an ex post facto negation of its interest in the property."

This argument is not persuasive given that lien priority on the 8.09 acres was the subject of ongoing litigation at the time Jay Kay Bear transferred its interests. Although Jay Kay Bear may have "reasonably believed it owned all legal and equitable property interest," it intentionally divested itself of all interest in the subject matter of the litigation, the 8.09 acres, during the pendency of the litigation. Thus, it is Jay Kay Bear's own actions during the litigation that deprived it of standing to appeal any adverse judgment. The trial court's ultimate findings and judgment were not an "ex post facto negation of its interest in the property."

While, in this case, the trial court's declaratory judgment may create problems for Jay Kay Bear or may adversely affect it in other ways, due to Jay Kay Bear's lack of present interest in the 8.09 acres, it does not hold a legally cognizable interest in the subject matter of the trial court's declaratory judgment. Thus, Jay Kay Bear has not satisfied its burden of proof to make a prima facie showing of standing to bring this appeal from the trial court's declaratory judgment. Without a legally cognizable interest in the subject matter of the trial court's judgment, Jay Kay Bear lacks standing to bring this appeal from the trial court's declaratory judgment. *See Gorman*, 966 S.W.2d at 864.

Because Jay Kay Bear lacks standing to bring this appeal, and it is the only defendant party to assert an appeal,[5] this court lacks subject matter jurisdiction over Jay Kay Bear's appeal. Jay Kay Bear's appeal is, therefore, dismissed for lack of subject matter jurisdiction.

---

[5] Although John Killian joined in the Notice of Appeal and responded to the Cross-Appeal, he did not join in the appellate brief or otherwise participate in this appeal. In any event, as General Partner of Jay Kay Bear, John Killian's interest would be the equivalent of Jay Kay Bear's.

**II.     CROSS-APPEAL: MARTIN V. JAY KAY BEAR**

*Issue One*:     *Whether the trial court erred by failing to find John Killian committed fraud*

Martin argues the trial court erred by entering a take-nothing judgment on her fraud claim against John Killian. Martin contends the evidence produced at trial conclusively shows that when Killian signed the settlement agreement that includes the notation, "for himself", he made himself a party to the agreement. Because the settlement agreement states, "[c]laims to be released: Any and all claims and liens by or through any party who signs this agreement," Martin contends that "[w]hile Killian was not a party in the underlying lawsuit, he made himself a party to the Mediation Agreement and, in so doing, agreed to release any and all claims and liens on the subject properties." Martin contends Killian intended that Martin rely upon his representations that all liens on the 8.09 acres had been released and no future liens would be filed, yet Killian's representations proved to be false when Killian foreclosed on his prior liens, one of which Martin did not know about.

Martin also contends Killian's representations that no future liens would be created also proved to be false when, after the signing of the settlement agreement, Killian drafted documents to acquire another lien interest in the 8.09 acre tract from Zyco (the Zyco Deed of Trust) and later foreclosed on this lien. Martin contends the facts supporting the trial court's ultimate declaratory relief making Martin's lien superior to Jay Kay Bear's and setting aside the April 6, 2010 foreclosure "likewise support a finding of fraud." Thus, Martin contends the trial court abused its discretion in denying her fraud claim "as it contradicts [the trial court's] finding of setting aside the April 6, 2010 foreclosure."

The basis of Martin's argument appears to be that because she presented evidence supportive of a finding that Killian committed fraud, the trial court erred by concluding otherwise. Likewise, Martin contends that because the same facts that would support the trial court's

declaratory relief would also support a finding that Killian committed fraud, the trial court erred by failing to make such a finding. These challenges can only be construed as a challenge to the legal and factual sufficiency of the evidence to support the trial court's denial of Martin's fraud cause of action.

*Standard of Review*

Following a bench trial, an appellate court utilizes the same standard of review for legal and factual sufficiency of a trial court's findings as that applied in sufficiency review of evidence supporting a jury's findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Skrepnek v. Shearson Lehman Bros., Inc.*, 889 S.W.2d 578, 579 (Tex. App.—Houston [14th Dist.] 1994, no writ). When a trial court does not enter findings of fact or conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the appellate record includes the reporter's and clerk's records, as in this case, implied findings of fact may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). In such event, in its review of a legal-sufficiency point, an appellate court will review the record in the light most favorable to the trial court's findings and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Van Dam v. Lewis*, 307 S.W.3d 336, 339 (Tex. App.—San Antonio 2009, no pet.). Additionally, the appellate court must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Sixth RMA Partners, L.P.*, 111 S.W.3d at 52.

When an appellant complains of the legal sufficiency of the evidence supporting an adverse finding on a matter on which the appellant had the burden of proof, it must show the evidence

- 14 -

establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Thus, when conducting legal sufficiency review of a take-nothing judgment, an appellate court must apply a two-prong test: (1) examine the record for any evidence that supports the finding, ignoring all evidence to the contrary; and (2) if there is no evidence to support the finding, then examine the record to determine if every element of the cause of action is established as a matter of law. *See id.* The appellate court must sustain the issue raised on appeal only if every element of the cause of action is conclusively established as a matter of law. *Id.*

When a plaintiff challenges the factual sufficiency of the evidence to support an adverse finding on a cause of action, the plaintiff must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. The appellate court must consider and weigh all of the evidence and can set aside the trial court's finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id.*; *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to given their testimony, the appellate court may not substitute its judgment for that of the trial court simply because it may disagree with the trial court's findings. *See Tigner v. City of Angleton*, 949 S.W.2d 887, 889 (Tex. App.—Houston [14th Dist.] 1997, no writ). When the record contains conflicting evidence, the trial court's resolution of the evidence or the trial court's weight given the evidence and testimony is conclusive. *See Brown v. State Bar of Texas*, 960 S.W.2d 671, 675 (Tex. App.—El Paso 1997, no writ). "[I]n a factual sufficiency challenge, the amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment." *Peter v. Ogden Ground Servs., Inc.*, 915 S.W.2d 648, 650 (Tex. App.—Houston [14th Dist.] 1996, no writ).

*Applicable Law*

The elements of a fraud cause of action are: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *Dow Chem. Co.*, 46 S.W.3d at 242. A promise of future performance constitutes an actionable misrepresentation if it was made with the present intent not to perform. *See Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made, but a circumstance to be considered with other facts to establish intent." *See Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 444 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). A misrepresentation is material if it induced the complaining party to enter into the contract. *See American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ).

*Application*

The trial court did not file findings of fact and conclusions of law. Thus, to succeed on her legal sufficiency challenges, Martin must show there is no evidence to support the take-nothing finding and all of the elements necessary to prove the fraud cause of action were conclusively established as a matter of law. With regard to her factual-sufficiency challenge, Martin must show the trial court's failure to find these elements is against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

Review of the record reveals evidence exists to support the trial court's take-nothing judgment. Further, Martin did not establish each element of fraud as a matter of law, and the trial court's determination of the disputed facts turns on its determination of the credibility of the witnesses, which this court must accept. Martin's principal argument on appeal is that by signing

the settlement agreement, Killian made himself a party to the action and then mis-represented to Martin that Jay Kay Bear would release all claims and liens on the 8.09 acres. However, there is evidence in the record that when Killian signed the Mediation Agreement, he intended to sign on his client's behalf,[6] only, and that the notation appearing under his signature stating, "for himself & clients in CA 2007-CI-15756", was added later by someone else and without Killian's knowledge or permission.

In addition, the settlement agreement included the phrase, "Claims to be released: Any and all claims and liens by or through any party who signs this agreement." The trial court could have interpreted the phrase, "by and through *any party* who signs this agreement" to mean *party* to the lawsuit, rather than a *signatory party* to the settlement agreement. Killian was not a party to the lawsuit, and by signing the settlement agreement, did not make himself a party to the lawsuit. *See* TEX. R. CIV. P. 79 (an entity is not a party unless named a party); *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (same).

Thus, evidence exists in the record to support the trial court's take-nothing judgment with regard to Martin's fraud claim. Because evidence exists to support the trial court's take-nothing judgment, this court may not re-weigh evidence or assess credibility. Martin has failed to show the evidence established all vital facts necessary to prove Killian committed fraud. Thus Martin's legal sufficiency challenge fails.

With regard to her factual sufficiency challenge, the same evidence that defeats Martin's legal sufficiency challenge also defeats her factual sufficiency challenge. This same evidence is not so weak or so against the great weight and preponderance of the evidence to make the trial court's denial of relief clearly wrong and unjust. The record contains conflicting evidence, and

---

[6] Killian's clients were the Alwais and Moczygemba plaintiffs in the second lawsuit.

while an inference can be made that Killian's intentions and actions were contrary to the trial court's finding, the trial court's resolution of the evidence and weight given is conclusive. *See Brown*, 960 S.W.2d at 675.

For these reasons, Martin's factual sufficiency challenge fails. Martin's first issue is overruled.

*Issue Two*: *Whether the trial court erred by failing to find John Killian filed fraudulent liens*

Martin contends the trial court erred by entering a take-nothing judgment on her fraudulent-lien claim against John Killian. Martin asserts the evidence produced at trial conclusively shows Killian filed fraudulent liens on the 8.09 acres.

In asserting this issue, Martin also challenges the legal and factual sufficiency to support the trial court's denial of her fraudulent lien cause of action. Thus, the standard of review for this issue is the same as that stated for Issue One. To establish her fraudulent-lien claim against Killian, Martin was required to show Killian made, presented, or used a document with (1) knowledge that the document was a fraudulent court record or a fraudulent lien or claim against real property; (2) with intent that the document be given the same legal effect as a court record or document evidencing a valid lien; and (3) with intent to cause injury. TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (West Supp. 2014).

In her Fifth Amended Petition, Martin alleges Killian drafted the Jay Kay Bear Deed of Trust and corresponding loan documentation on behalf of Jay Kay Bear on June 3, 2008. The transaction created a lien on the same property BMI pledged to Martin as collateral for the proposed settlement agreement. Martin further alleges Killian took the Zyco lien on behalf of Jay Kay Bear as security on a loan "likewise knowing that it was a claim against the same 8.09 acres previously pledged to Martin as collateral. Killian intended the Jay Kay Bear Deed of Trust and the Zyco Lien be given the same legal effect as a court record when Jay Kay Bear recorded the

documents in the real property records …." Martin alleges Killian had knowledge the Jay Kay Bear Deed of Trust, Zyco Lien and Foreclosure Sale Deeds were all fraudulent at the time they were filed.

The record reveals Martin's fraudulent-lien cause of action fails as a matter of law. Martin contends Killian wrongfully drafted and executed documents following the mediation, giving himself and Jay Kay Bear lien priority in the same property pledged to Martin in the mediation. However, even if Martin's allegations are true, and even assuming Killian's actions were improper, the allegations and Killian's actions do not constitute a fraudulent-lien cause of action. Martin does not allege Killian obtained the lien on the 8.09 acres by fraudulent means or without the implied or express consent of the property owner, BMI, or of Zyco. Martin alleges only that Killian's actions were wrongful in that he subverted the intent of the mediation and subsequent settlement agreement. In fact, the record reveals the lien created by Killian through Jay Kay Bear was a valid lien, and the corresponding court documents were valid documents. Thus, even if Martin's allegations are true, Killian's drafting and filing of the documents was not an action constituting the filing of a fraudulent lien, but was instead an action creating a valid lien obtained in a wrongful manner.

Therefore, Martin's legal and factual sufficiency challenges fail, and her second issue is overruled.

*Issue Three*:     *Whether the trial court erred by denying Martin's Motion to Modify the Modified Judgment*

Martin argues the trial court erred by denying her Motion to Modify the Modified Judgment. Martin contends the Modified Judgment does not resolve the issue whether her foreclosure conducted on February 2, 2008 was superior to the simultaneous foreclosure conducted by Jay Kay Bear on the same date. Further, Martin contends the trial court's requirement that she

file an additional suit to clear title to the 8.09 acres, and its additional requirement that Zyco be made a party, is inconsistent with the declaratory relief given.

In her Fifth Amended Petition, Martin requested declaratory judgment "to determine the validity of the real estate documents filed of record on the properties made the subject of this suit." In addition, Martin requested "declaration of the rights, responsibilities or other legal relations of the parties made subject to the real estate and contractual documents made the subject of this suit." The trial court entered a Modified Final Judgment, in which it held Martin's lien on the 8.09 acres "is superior to the Jay Kay Bear, Ltd. Lien dated June 23, 2008 …." Based upon this holding, the trial court ordered Jay Kay Bear's "April 6, 2010 foreclosure of the 8.09 acres … be and is hereby set aside." Finally, the trial court stated, it "further finds that title and lien positions (except as set forth above) to the 8.09 acres can be determined (if necessary) at a subsequent proceeding when all potential parties/lien holders (including Zyco) are parties."

Martin filed a Motion to Modify the Modified Final Judgment, in which she argued the trial court "left open the issues of priority" between the two competing foreclosures conducted by Jay Kay Bear and herself, and the trial court should resolve this issue of superiority by vesting title in Martin. Martin characterizes the Modified Judgment as "suggest[ing] that [Martin] file a separate suit to remove cloud on title as a means of further relief." Martin states she "properly brought this suit, in part, not for a declaration of title per se, but to resolve the priority of [Martin's] lien interests so that a clear property title determination could ultimately be made." Because the trial court had all of the evidence before it to vest title in Martin, she contended the trial court should modify the Modified Judgment to enter a judgment that vested title in her. Specifically, Martin requested the trial court modify the Modified Judgment "to 1) declare that [Martin's] June 3, 2008 lien is superior to the June 3, 2008 'JKB Lien' with regards to the 8.09 acres; 2) declare

the June 3, 2008 'JKB Lien' invalid; and 3) set aside the February 2, 2010 foreclosure conducted by Defendant John Killian on the 8.09 acres pursuant to the June 3, 2008 'JKB Lien.'"

*Standard of Review*

We review a trial court's denial of a motion to modify a final judgment for abuse of discretion. *See Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 804 (Tex. App.—Dallas 2011, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Review of Martin's Motion to Modify the Modified Judgment reveals ambiguity with regard to the relief requested. Within the body of her motion, Martin argues the trial court should modify its judgment to vest title to the 8.09 acres in her. However, in the specific requested relief, Martin requests the trial court declare her lien superior to Jay Kay Bear's, declare Jay Kay Bear's lien invalid and set aside Jay Kay Bear's foreclosure dated February 2, 2010.

Although Martin's requested relief is uncertain, on appeal, Martin has failed to show the trial court acted in an arbitrary or unreasonable manner or without reference to any guiding rules or principles in denying her Motion to Modify the Modified Judgment. Martin has failed to show the trial court's denial of her motion was arbitrary or outside any guiding rules or principles. For this reason, alone, Martin's third issue fails.

In addition, Martin's requested declaratory relief in her Motion to Modify the Modified Judgement goes beyond the declaratory relief requested in her Fifth Amended Petition. In her petition, Martin requests a determination of the validity of documents and of "the rights, responsibilities and legal relations of the parties". Martin does not seek declaration of title in her Fifth Amended Petition. Therefore, the request for declaration of title in her Motion to Modify Judgment is beyond the scope of the relief plead and litigated.

Finally, the trial court's Modified Judgment does not *require* that Martin file a separate action to remove a cloud from title to the 8.09 acres, rather, it states that title and lien positions "can be determined (if necessary) at a subsequent proceeding when all potential parties/lien holders (including Zyco) are parties." By ruling in this manner, the trial court indicates it does not have all of the pleadings, evidence or parties before it that are necessary to determine title to the 8.09 acres.

The trial court did not act in an arbitrary or unreasonable manner or without reference to any guiding rules or principles in its denial of Martin's Motion to Modify the Modified Judgment. For this reason, Martin's third issue is overruled.

*Issue Four*:     *Whether the trial court erred by failing to grant Martin's request for attorney's fees*

In her final issue, Martin asserts the trial court erred by refusing to award her attorney's fees in her declaratory judgment action because she prevailed with regard to the declaratory judgment.

In a declaratory action, the trial court has discretion to award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law. *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 162 (Tex. 2004); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Ameristar Jet Charter, Inc. v. Cobbs*, 184 S.W.3d 369, 376 (Tex. App.—Dallas 2006, no pet.). "Whether it is 'equitable and just' to award less than the fees found by a jury is not a fact question because the determination is not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances." *Ridge Oil Co.*, 148 S.W.3d at 162. Thus, the question "whether the attorney's fees are reasonable and necessary are fact questions; whether the attorney's fees are equitable and just are matters of

law, which come within the trial court's discretion." *Marion v. Davis*, 106 S.W.3d 860, 868 (Tex. App.—Dallas 2003, pet. denied); *Ridge Oil Co.*, 148 S.W.3d at 161. An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence or some evidence of substantive and probative character exists to support the trial court's decision. *Marion*, 106 S.W.3d at 868. An appellate court must presume a trial court acted within its discretion unless the record discloses the contrary. *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.); *Navistar Int'l Corp. v. Valles*, 740 S.W.2d 4, 6 (Tex. App.—El Paso 1987, no writ). Thus, without findings of fact showing the basis for the trial judge's exercise of discretion, an appellate court cannot conclude as a matter of law that the trial judge abused that discretion in declining to award attorney's fees. *Sanchez*, 308 S.W.3d at 526; *Marion*, 106 S.W.3d at 869; *see also Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654–55 (Tex. App.—Austin 1997, no pet.).

On this record, Martin has not shown the trial court abused its discretion in denying her request for attorney's fees. The record reflects neither findings of fact or conclusions of law nor a request for such findings with regard to the trial court's ruling on attorney's fees. Because Martin is not entitled to attorneys' fees simply because she was a prevailing party, without findings of fact establishing the basis for the trial court's exercise of discretion, this court cannot conclude, as a matter of law, that the trial court abused its discretion in declining to award attorney's fees.

Martin has not demonstrated any abuse of discretion by the trial court in denying recovery of her attorney's fees. For this reason, Martin's fourth issue is overruled.

Jason Pulliam, Justice